Mottram *v.* Heyer.

MOTTRAM and others *vs.* HEYER, survivor of Heyer.

It is not necessary in order to terminate the vendor's right of *stoppage in transitu*, that the goods, after arriving at the place of delivery, should have come to the *corporeal* possession of the consignee. A *constructive* possession, or the exercising of acts of ownership by the consignee after such arrival is sufficient. *Per* BRONSON, C. J.

The defendants, merchants in New-York, ordered a cask of hardware from the plaintiffs, who were manufacturers in England, and it was shipped on board a vessel which arrived in New-York on the 7th of April, on which day the defendants, having received the bill of lading, paid the freight, and on the 9th of April *entered* the goods at the custom house. After this they were taken to the public store, and while remaining there and before the duties were paid, the defendants having become bankrupt, the plaintiffs' agent, on the 28th of April, demanded the goods of the defendants; *held,* that the *transitus* had ended when the demand was made, and that the plaintiffs had no right to stop the goods.

It *seems*, the case would have been different if the freight had not been paid, or if no *entry* of the goods had been made. *Per* BRONSON, C. J.

ERROR to the superior court of the city of New-York. Thomas Mottram & Sons were plaintiffs in the court below, and brought replevin against E. P. & H. Heyer for a cask of hardware. The defendants were merchants in the city of New-York, and ordered the goods from the plaintiffs, who owned a factory in England, on a credit of four and six months. The goods were shipped at Liverpool on board the Cambridge, and consigned to the defendants, they paying freight. About the 7th of April, 1842, the ship arrived in New-York, and on that day the defendants, having received the bill of lading, paid the freight. On the 9th of April they entered the goods at the custom house; but they did not pay the duties until the 29th of April. On the 28th of April, the defendants having become bankrupts, the plaintiffs' agent called on them, and requested

them to give up the goods.    The defendants answered that they
would not give them up until they had consulted friends.    At
this time the goods were in the public store of the custom house.
The next day the plaintiffs' agent went to the custom house and
found that some one was passing the goods.    He then called at
the defendants' store and demanded the goods; and not being
given up, the plaintiffs sued out a writ of replevin and took the
goods in the store of the defendants, where they had just arrived
from the custom house; the cask in which the hardware was
imported not having been broken.    The judge charged the jury, ·
that by the receipt of the bill of lading by the defendants, the
payment of the freight by them, and their entry of the goods at
the custom house, the *transitus* was ended; and the plaintiffs
had no right to stop the goods.    Verdict for the defendants; and
judgment for the defendant E. P. Heyer; the other defendant
having died after verdict.    The plaintiffs bring error on a bill of
exceptions.

*N. Hill, jun.* for the plaintiffs in error.    *Stoppage in
transitu* is favored and the courts have been liberal in the
application of the rules of law on this subject, where an un-
paid vendor is endeavoring to regain possession, after the pur-
chaser has became insolvent.    (*Northey* v. *Field,* (2 *Esp.*
613; *Selwyn's N. P.* 1285.)    The claiming or demanding
of the goods on behalf of the vendor was sufficient.    The
rule formerly held, that possession must be obtained by him
in order to assert his right has been relaxed by later decis-
ions.    (*Northey* v. *Field, supra; Litt* v. *Cowley,* 7 *Taunt.*
169; *Mills* v. *Ball,* 2 *Bos. & Pull.* 462.)    Besides, it was
assumed on the trial that enough was done when the plain-
tiffs' agent first went to the defendants' store to constitute
a *stoppage,* if the right at that time existed.    The goods did
not come to the possession of the defendants in such manner
as to preclude the right to reclaim them, until they had been
passed at the custom house and *the duties had been paid.*
This was not done until the day after the claim and demand on
behalf of the plaintiffs were made.    A delivery which will

merely change the property, will not be sufficient to prevent the exercise of the right to stop the goods. Such a delivery takes place when the property is delivered to the carrier. The *transitus* is not ended on the arrival of the vessel in port. The goods must then pass through the custom house, and the right to reclaim them remains until the purchaser has a legal right to the actual possession. While there is any one who has a right to stand between the goods and the purchaser and to prevent a manual possession by the latter, the seller may exercise this right. In this case it was the duty of the officers of the customs to hold on to the goods until the duties were paid, and such was the situation of affairs when the demand was made on behalf of the plaintiffs. *Northey* v. *Field*, before referred to, is decisive upon this point. The counsel also referred to *Tucker* v. *Humphrey*, (4 *Bing.* 516;) *Buckley* v. *Furniss*, (17 *Wend.* 504;) *Holst* v. *Pownal*, (1 *Esp.* 240;) *U. S.* v. *Lindsey*, (1 *Gallis.* 365;) *Abbot on Ship.* 446; *Cross on Lien*, 382, 3; *Townley* v. *Crump*, (4 *Adolph. & Ellis*, 58;) 5 *Nev. & Man.* 106; *Ryberg* v. *Snell*, (2 *Wash. C. C. Rep.* 403;) *Walley* v. *Montgomery*, (3 *East*, 585;) *Burnham* v. *Winsor*, (5 *Law Reporter*, 507;) *Stephens' N. P.* 2587.

The case of *Northey* v. *Field* is referred to with approbation in many elementary books, and never has been questioned. It is conclusive upon this case, unless the *entry* at the custom house makes a difference. An entry, however, is merely a *claim* of the goods by the consignee; but such a claim does not defeat the vendor's right. (*Holst* v. *Pownal, supra*; *Stephens' N. P. supra.*)

*A. S. Johnson*, for the defendant in error, referred to the act of congress to shew the practice relating to the passing of goods through the custom house. (1 *Story's Laws U. S.* 606, 617, 622, §§ 36, 52, 56.) The goods remain on board the ship for fifteen days, at the expiration of which time a general order is made by virtue of which the remaining cargo which has not been before entered, is taken to the public stores, and if not claimed within a limited time is sold for the payment of the

duties. The *entry* to be made by the importer is a statement of the goods imported by him, with the marks, &c. on the packages, and is an emphatic act of ownership. In *Abbot on Shipping*, 305, there is a more full statement of the case of *Northey* v. *Field,* by which it appears that the goods had not been *entered* when they were claimed by the vendor. In 3 *Stephens' N. P.* 2588, *note,* it is shewn that in that case the carrier's lien for freight continued while the goods remained in the public stores; but here the freight had been paid. Where the property in the goods has passed so that the consignee is entitled to sell them, the vendor's right ends. . (*Wright* v. *Lawes,* 4 *Esp.* 82; *Dixon* v. *Baldwen,* 5 *East,* 175; *Dodson* v. *Wentworth,* 4 *Man. & Gr.* 1080.) Sometimes imported goods never leave the public stores until entered for re-exportation. Where the warehouse system prevails the goods remain in the public warehouse for an indefinite period, and during the pleasure of the importer, the duties remaining unpaid until they are sold to go into the country. That system of collecting duties has prevailed in this country, and may be re-enacted. It has long been in force in England in respect to many articles. Policy requires that the ownership of property thus situated should be in all respects the same as though it had been actually delivered.

There was not in this case any sufficient demand in behalf of the vendor. Formerly *stoppage in transitu* could only be exercised by the vendor's obtaining actual possession. This was likely to lead to breaches of the peace in obtaining the possession, and a demand was held to be enough; but the demand to be effectual should be made of some person who has the capacity to give up the goods. Here it was made of the consignees, the goods being in the public store. (1 *Bell's Cases,* 229, § 5.) In *Newhall* v. *Vargas,* (9 *Mees. & Wels.* 518,) it was held that notice must be given to the person who has, or whose servants have, the custody of the property. No demand was here made of the storekeeper or of any officer of the customs. *Holst* v. *Pownal,* cited to shew that a claim of property by the consignee does not put an end to the vendor's

Mottram *v.* Heyer.

right is in effect overruled in *Mills* v. *Ball,* (2 *Bos. & Pull.* 457—461.) See also *Oppenheim* v. *Russell,* (3 *id.* 42,) *Foster* v. *Frampton,* 6 *Barn. & Cress.* 107,) to the same effect.

*By the Court,* BRONSON, Ch. J. Goods may be stopped so long as the transit continues, whether by land or water, from the consignor to the consignee; and whether they are in the hands of the carrier, a warehouse-keeper, wharfinger, or any other middle-man connected with the transportation. The right of stoppage ceases when the goods have reached their place of destination, and have come to the actual or constructive possession of the consignee. It was once said by Lord Kenyon, that the goods must have come to the corporal touch of the consignee; but he afterwards wished that the expression had never been used: and it is now fully settled that a constructive possession is sufficient. It is enough that the goods have reached the place of delivery, and the consignee has exercised some act of ownership over them. Now here the goods had reached their place of destination; the carrier had completed his work, and received his reward; and the defendants, besides paying the freight, had entered the goods at the custom house, where they remained at the risk and charge of the defendants. I cannot doubt that the *transitus* was at an end before the plaintiffs attempted to regain the possession.

The plaintiffs rely strongly on the case of *Northey* v. *Field,* (2 *Esp.* 613,) where Lord Kenyon held that goods in the king's stores for the non-payment of duties were *in transitu,* and might be stopped by the consignors. But it does not appear from the report of the case that the consignees had either paid the freight, entered the goods at the custom house, or exercised any other act of ownership over the property. Lord Tenterden mentions the fact that the consignees had not entered the goods. (*Abbott on Ship.* 377, *ed. of* 1829.) And Mr. Stephens says, the goods were considered as still in the possession of the carriers and subject to their lien. (*Stephens' N. P.* 2587.) In *Burnham* v. *Winsor,* (5 *Law Reporter,* 507,) the consignees had not en-

tered the goods, nor exercised any other act of ownership over the property. It is enough to say of these two decisions that they are plainly distinguishable from the case in hand.

Judgment affirmed.