ROSWELL SAWYER *v.* WILLIAM JOSLIN.

The right of stopping goods *in transitu* ceases, whenever the goods, in pursuance of the original destination given them by the consignor, have come into either the actual or constructive possession of the consignee.

Where goods were shipped at Troy and directed to the vendee at Vergennes, and were landed upon the wharf at Vergennes, which was half a mile from the vendee's place of business, and it was proved, that the wharf was the usual place of the vendee's receiving goods in that town, and that, after they were landed upon the wharf, neither the wharfinger, nor any person for him, or for the carriers, had any charge of the goods, but that it was usual for the vendee, and others who received goods at that wharf, to receive the goods upon the wharf and transport them to their places of business, and it appeared that the goods were not subject to any lien for freight or charges, it was held, that the wharf was the place of ultimate destination of the goods intended by the consignor, and that the goods, when landed there, came into the constructive possession of the vendee and were beyond the bounds of the vendor's right of stoppage *in transitu*.

TROVER for sundry articles of merchandize, which the plaintiff claimed by virtue of a right to stop them *in transitu.* Plea, the general issue, and trial by the court, December Term, 1845,—BENNETT, J., presiding.

This case was heard in the supreme court at the same time with another, in favor of Patrick Fitzsimmons against the same defendant. That case had been tried by jury and a verdict returned for the defendant; and the bill of exceptions in this case referred to and adopted the facts stated and the law charged in the other, so far as regarded the plaintiff's right to stop the goods, as being *in transitu.* Another question arose in the other case, upon which it was continued for farther argument. This case, depending upon the trial of the other, was treated by the supreme court as having been tried by jury, and the rulings of the court in that case were applied to this.

It appeared that the plaintiff, on the 28th of June, 1844, at Troy, New York, sold to one Preston, who was a retail merchant residing and doing business at Vergennes in this state, the goods in question on credit. The goods were directed to Preston, at Vergennes, and were forwarded by the plaintiff, by the Vergennes and Troy line of boats. The boat having the goods on board arrived at the wharf of one Chapman, in Vergennes, on the sixth of July; and the goods, with others directed to Preston, were landed on the wharf the same day, and were immediately afterwards attached by the defendant, as sheriff's deputy, on suits in favor of Wooster & Russell and Bates & Sage against Preston. The plaintiff afterwards, on the thirteenth of the same July, on learning the insolvency of Preston, demanded of the defendant the goods, insisting upon his right to reclaim them as his own; but the defendant refused to deliver them.

Evidence was introduced tending to prove, that the wharf, where the goods were landed, was the usual place of landing goods brought by the Vergennes & Troy line of boats for merchants in Vergennes; that Preston's place of business was on the hill, nearly half a mile from the wharf; that Chapman, who had charge of the wharf and of a store house, was one of the proprietors of the Vergennes & Troy line of boats; that Chapman was not the agent of Preston, and Preston had not used the store house as his place of doing business; that there were a number of persons who made it a business to

transport goods, which had been landed for the Vergennes merchants, to the different stores, for the owners; that when goods, brought by this line of boats for the merchants in Vergennes, are landed upon the wharf, the proprietors of the boats take no farther charge of them, but the custom of the place is, for the persons, to whom they are directed, to take them from the wharf immediately after they are unloaded from the boat; that Chapman, who has charge of the wharf, takes no charge of such goods, and exercises no control over them, after they are landed, and never puts them in the store house, unless some article is accidentally left, which might receive injury by being out through the night,—and then he does it as matter of accommodation, for which he makes no charge; that it is not customary to claim or take the freight and charges on the goods, before they are delivered; that no such claim was made in this case; and that, if these goods had not been attached, they would have been delivered to Preston, or to any other persons authorized to receive them, without any claim for freight or charges being made.

Upon this evidence the court instructed the jury, that the goods were not liable to attachment, as against the right of the plaintiff to stop them *in transitu*, while they were on board the boat; that if they found, that the goods had been delivered on the wharf, before the attachments were made, and that Preston and the other merchants in Vergennes had not had their goods put in a store house by the wharfinger at the wharf, but, in their course of business, received them on the wharf, and that, when the goods in question were delivered on the wharf, Chapman, the wharfinger, had no farther care or direction of them, but that they remained upon the wharf to be taken away at Preston's pleasure, if the attachments had not intervened, then, in such case, the *transit* of the goods must be considered as at an end, when the goods were landed on the wharf; and that, after that time, they were liable to be attached by the creditors of Preston, so as to defeat any right, which the plaintiff could claim, to stop them while on the way to the place of their final destination. To these instructions the plaintiff excepted.

Sawyer *v.* Joslin.

*E. D. & F. E. Woodbridge* and *Asahel Peck* for plaintiff.

Neither the arrival of the goods at the wharf, nor the landing them upon the wharf, terminated the *transitus*, so as to divest the vendor of the right of stoppage *in transitu*. A delivery may be complete for every other purpose, and yet not sufficient to defeat this right; to divest it there must be an *actual delivery*; a constructive delivery is insufficient. ASHURST, J., BULLER, J., and GROSE, J., in *Ellis* v. *Hunt*, 3 T. R. 464. The same doctrine is laid down in *Bohtlingk et al.* v. *Inglis et al.*, 3 East 381. In *Hunter* v. *Beal*, cited in *Ellis* v. *Hunt*, Ld. MANSFIELD said, "the goods must have come to the *corporal touch* of the consignee. In *Oppenheim et al.* v. *Russell*, 3 B. & P. 42, ROOKE, J., said "When there is an actual delivery, the *transitus* is at an end; but when the delivery is constructive, or fictitious, then the law considers that as a delivery for certain purposes only; for it is a fiction of law, and the fiction of law must work equity; but the fiction is never carried so far, as to deprive the consignor of the right to resume them, if stopped before they have actually got to the possession of an insolvent consignee." In *Stokes* v. *La Riviere*, cited by LAWRENCE, J., in 3 East 397, Ld. MANSFIELD said, "No point is more clear, than that, if goods are sold and the price not paid, the seller may stop them *in transitu, I mean in every sort of passage to the hands of the buyer.*"

The landing goods at the wharf, or placing them in the store house of the wharfinger, or delivering them to a packer at the port of destination, is not such a delivery as terminates the *transitus*, or divests the right of stoppage *in transitu*, unless the wharfinger is the actual *agent* of the consignee. *Bartram* v. *Farebrother*, 4 Bing. 579, [15 E. C. L. 79.] *Jackson* v. *Nicholl*, 5 Bing. N. C. 508, [35 E. C. L. 202.] *Naylor* v. *Dennie*, 8 Pick. 196. *Edwards* v. *Brewer*, 2 Mees. & Welsb. 375. Chit. on Cont. 433. *Covell* v. *Hitchcock*, 23 Wend. 611. Long on Sales 309. *James* v. *Griffin*, 2 Mees. & Welsb. 623. In case of such delivery the question is not, whether the vendor and carrier have fully completed their duty, but whether the goods have actually reached the place contemplated in the purchase, as the ultimate destination of the goods; and if a farther and more absolute and complete possession by the vendee is contemplated, then such delivery to a wharfinger, warehouse

man, or packer, does not put an end to the *transitus;* but when such reception is the only possession contemplated by the vendee, then the *transitus* is at an end;—as when goods are delivered on board of a ship chartered by the vendee, to be transported *to him,* the right of stoppage *in transitu* still continues, because an actual possession is contemplated; *Bohtlingk* v. *Inglis,* 3 East 381; but if delivered on board such ship to be transported *from* the vendee, such delivery is complete, as no other possession is contemplated; *Fowler* v. *Kymer et al.,* cited in *Ib.*; *Scott* v. *Pettit,* 3 B. & P. 469. The cases, where goods have reached the possession of an agent, there to remain to be there disposed of, or to await some new desti-nation,—as in *Leeds* v. *Wright,* 3 B. & P. 320; *Dixon* v. *Baldwen,* 5 East 175; *Rowe* v. *Pickford,* 8 Taunt. 83,—having no ulterior place of destination named to the vendor, do not conflict with the principle for which we contend.

It is said in some of the cases, that a delivery to the vendee, eith-er *actual or constructive,* terminates the *transitus;*—but this con-structive delivery is to be understood in a limited sense; as the ordi-nary delivery by the vendor to the carrier, whether named or not named by the vendee, is a constructive delivery to the vendee, so as to vest the property in the vendee; and yet it does not defeat the right of stoppage *in transitu.* A constructive delivery, or posses-sion, for the purpose of this question, is only where there is an ac-tual possession by the particular agent of the vendee, specially ap-pointed to receive the goods for him. *Whitehead* v. *Anderson,* 9 Mees. & Welsb. 517. *Jackson* v. *Nicholl,* 35 E. C. L. 202.

It makes no difference, that the goods have reached that point in the transit, beyond which there are no common carriers, and where the consignee is understood to receive them. *Covell* v. *Hitchcock,* 23 Wend. 611. In this case the exceptions show, that Chapman was not the agent of the consignee, and that his warehouse was not used as the warehouse of the consignee; that there were common carriers from the wharf to the consignee's place of business, which was the ultimate destination of the goods; that while upon the wharf, or in the store, the goods *still* had an *ulterior destination, contemplated in the purchase and transmission. Ellis* v. *Hunt,* 3 T. R. 464. *Hunter* v. *Beal,* cited in *Ib. Hodgson* v. *Loy,* 7 T. R. 436. *Dixon* v. *Baldwin,* 5 East 175. *Oppenheim* v. *Russell,* 3 B. & P. 42. *Smith*

Sawyer *v.* Joslin.

v. *Goss,* 1 Camp. 282. *Mills* v. *Ball,* 2 B. & P. 456. *Scott* v. *Pettit,* 3 B. & P. 469. *Bohtlingk* v. *Inglis,* 3 East 381. *Jackson* v. *Nicholl,* 35 E. C. L. 202. *Crawshay* v. *Eades,* 1 B. & C. 181, [8 E. C. L. 51.] *Tucker* v. *Humphrey,* 4 Bing. 516, [15 E. C. L. 63.] *Bartram* v. *Farebrother,* 15 E. C. L. 79. *Stubbs* v. *Lund,* 7 Mass. 453. *Naylor* v. *Dennie,* 8 Pick. 196. *Coates* v. *Railton,* 6 B. & C. 403, [13 E. C. L. 223.] *Buckley* v. *Furness,* 15 Wend. 137. *Covell* v. *Hitchcock,* 23 Ib. 611. *Whitehead* v. *Anderson,* 9 M. & W. 517.

Independent of the attachment, the goods, when landed on the wharf, were in the custody of Chapman as carrier, (he being partner in the line,) or as wharfinger; and he had a right to keep the custody, *until the* freight was paid. While this right existed, the delivery was not complete. *Crosby* v. *Ellis,* 1 B. & C. 160, [8 E. C. L. 51.]

But if the goods were attached as they were landed, leaving no moment of time in which Preston could have taken possession, then, as they passed from the custody of the carrier into the custody of the law, there was no delivery to Preston, and the right to stop the goods *in transitu* still continued, the same as if attached while on board the boat. *Northey et al.* v. *Field,* 2 Esp. R. 613.

*J. Pierpoint* and *C. Linsley* for defendant.

When the goods were landed upon the wharf, under the circumstances detailed in the bill of exceptions, they had arrived at their place of destination; and the place of destination, so far as the question in this case is concerned, is not to be determined by the place to which they might ultimately go, under the direction of the vendee, or where they were finally to be used or disposed of by him, but is the place to which they were to go under the direction given them by the vendor, and where, when they arrive, they are to remain stationary, subject to the order and under the control of the vendee, until he takes the actual personal possession of them, or gives them some new direction; and the right of the vendor to stop goods *in transitu* ceases, when they arrive at such place of destination. 2 Kent 543—546. 13 E. C. L. 111, 223. Chit on Cont. 342. Long on Sales 308. Story on Cont. 325. Smith's Lead. Cas. 551. *Rowe* v. *Pickford,* 8 Taunt. 83, [4 E. C. L. 27.]

23

*Tucker* v. *Humphrey*, 4 Bing. 516, [15 E. C. L. 63.] *Crawshay* v. *Eades*, 1 B. & C. 181, [8 E. C. L. 54.] *Jackson* v. *Nicholl*, 5 Bing. N. C. 508, [35 E. C. L. 202.] *Ellis* v. *Hunt*, 3 T. R. 464. *Wentworth* v. *Outhwaite*, 10 M. & W. 435. *Hitchcock* v. *Covell*, 20 Wend. 167.

The opinion of the court was delivered by

HALL, J. By the common law, as it is now understood in England and in the several states, the unpaid vendor of goods, in case of the insolvency of the vendee, may reclaim them, while on their passage to the vendee, not only against the vendee himself, but also against his creditors, by stopping them while in *their transit*. For, although the goods, by being dispatched to the vendee by the usual modes of conveyance, become, for other purposes, the property of the vendee, are considered in his constructive possession and at his risk, so that he and not the vendor must bring an action for their loss, or for any injury to them, yet the vendor is held to have such an equitable lien on them, though out of his possession, that, on learning the insolvency of the vendee, he may reclaim them, while in their transit to him, as security for the price for which they had been sold. This right of stoppage *in transitu* is held not to be defeated by an attachment of or levy upon the goods, as the property of the vendee, while in their transit; and a demand of the goods by the vendor, while in the hands of a levying or attaching officer, is held a sufficient claim of them; and this without reference to the question, whether the goods, but for the levy, or attachment, would probably have reached the vendee, and thus have destroyed the vendor's right. The levy being made while the goods are subject to the lien of the vendor, it is held inoperative as against him, provided his right be made known and insisted on before an actual sale by the officer.

Although the general doctrine of the right of the consignor of goods, sold on credit, to stop them while in their *transitus* to an insolvent consignee, is well established, yet difficulties often arise in particular cases, in determining whether the goods, at the time of the attempted exercise of the right of the consignor, are in their transit, or are to be treated as having arrived at their place of destination. No two cases are alike in all their circumstances; and it has been found

difficult to lay down any specific rule, by which the determination of the transit is to be ascertained. Eminent judges, in some of the early cases on this subject, are reported to have said, that, in order to divest this right of the consignor, the goods must have come to the "corporal touch" of the consignee. But in *Wright* v. *Lawes*, 4 Esp. R. 85, Lord KENYON remarked, " I once said, that, to confer a property on the consignee, a corporal touch was necessary. I wish the expression had never been made, as it says too much." Subsequent judges, considering this expression as figurative, have sought to modify it, by saying, that the *actual* possession of the consignee was intended ; while in all or most of the modern cases, as well as by the elementary writers, it seems to be conceded, that the *transitus* is at an end, whenever the goods, in pursuance of the original destination given them by the consignor, have come into either the actual or constructive possession of the consignee. What, however, is to be understood as constituting such an actual or constructive possession of the vendee, as to defeat the right of the vendor, is to be gathered rather from an examination of the particular cases, than from any precise definition, which has been given of the terms themselves. Chancellor Kent says, (2 Kent 545,) " In many of the cases, where the vendor's right of stopping *in transitu* has been defeated, the delivery was constructive only; and there has been much subtlety and refinement on the question, as to the facts and circumstances which would amount to a delivery, sufficient to take away the right. The point for inquiry is, whether the property is to be considered as still in its transit; for if it has once fairly arrived at its destination, so as to give the vendee the actual exercise of dominion and ownership over it, the right is gone."

The question in this case is, whether the landing of the goods upon the wharf is to be considered as an actual or constructive delivery of them to Preston, within the doctrine of the adjudged cases on this subject. I am unable to come to any other conclusion, than that it was such a delivery. Under the charge of the court the jury must have found, that all the duties and responsibilities of the transportation line, in regard to the goods, had ceased, that no duty or responsibility was cast upon Chapman, the wharfinger, by the landing of the goods on his wharf, that the goods lay on the wharf, subject to the control and direction of no other person than Preston,

Sawyer *v.* Joslin.

and that they would remain there in that precise position, until Preston saw fit to remove them. It is difficult to conceive of a more effectual delivery of goods than this, short of their coming to the corporal touch of the vendee. The special property of the carriers had ceased; the wharfinger had nothing to do with the goods, and unless they are to be considered as having been in the possession of the vendee, no person whatever had any possession of them,—they were absolutely abandoned by all persons. It will not be pretended they had assumed the character of lost goods. They must therefore have come to the possession of Preston. It being the custom for Preston to receive goods, thus consigned him, on the wharf of Chapman, that must be considered as the place to which they were directed by the vendor.

When the goods were landed on the wharf, the result of the original impulse, impressed upon them by the vendor in transmitting them to the vendee, was accomplished. They would go no farther under that impulse. They were not in the hands of a middle man, to be forwarded by other carriers. Chapman had no charge of them, and could not therefore be a middle man; and there was no other person, standing in that character. The wharf of Chapman, in the language of the books, became the warehouse of Preston for the reception of the goods, and must consequently be considered the place contemplated by the consignor, as that of their ultimate destination. Preston could not have remained in his store, with his arms folded, expecting the goods to be driven up to his door. He must have looked for them at the wharf of Chapman, which, for the purposes of their reception, he had made his own; and when they arrived there, their *transitus*, so far as regarded the right of the vendor to stop them, must, I think, be considered as ended. *Richardson* v. *Goss*, 3 B. & P. 119. *Scott* v. *Pettit*, Ib. 469. *Leeds* v. *Wright*, Ib. 320. *Dixon* v. *Baldwin*, 5 East 175. *Foster* v. *Frampton*, 6 B. & C. 107, [13 E. C. L. 111.] *Rowe* v. *Pickford*, 8 Taunt. 83. *James* v. *Griffin*, 2 Mees. & Welsb. 623. *Wentworth* v. *Outhwaite*, 10 Mees. & Welsb. 435. *Dodson* v. *Wentworth*, 4 Man. & Gr. 1080, [43 E. C. L. 555.]

No case is found in the books precisely like the present, in its prominent circumstances; though the cases are numerous, in which the transit of the goods has been held to be terminated by their

Sawyer v. Joslin.

coming within the control of the consignee, before they had reached his actual place of business, and even when they had not arrived at the port, or town, to which they had been directed by the consignor. Such are most of the cases before cited. The case of *Covell* v. *Hitchcock*, 23 Wend. 611, was much relied upon by the plaintiff's counsel in the argument; and it does indeed carry the right of stoppage to a great length. But that case is distinguishable from the present in two particulars. In that case the goods were directed to the vendor, at Willardsburgh, a place thirty miles beyond Havana, the place where they were stopped by the consignor. It was not, therefore, in accordance with their original direction, that their transit should be ended at Havana. In the case at bar the goods had arrived at the port or place of their original direction. It was just as consistent with that direction, that they should be delivered on the wharf at Vergennes, as at any other place in that town. And secondly, the goods in *Covell* v. *Hitchcock* were in the custody of a warehouse man, when they were stopped, who was holding them for the consignee; whereas in this case the goods were in the custody of no one, unless they were in that of the consignee. It may also be remarked, that the decision relied upon for the plaintiff in *Covell* v. *Hitchcock* was that of the court of errors of New York, reversing a contrary decision of the supreme court of that state in the same case, (20 Wend. 170); and that the law of the supreme court in that case seems well sustained by the two recent cases of *Wentworth* v. *Outhwaite* and *Dodson* v. *Wentworth*, before cited, the one in the court of Exchequer and the other in the Common Pleas, in England.

Numerous other cases were either read or referred to in the argument for the plaintiff; but none of them appear to me to reach the question in this case. In some of them are found very strong expressions of judges in favor of an extended right of the consignor to stop the goods on their way to the consignee. But the language of courts must be read with reference to questions in the cases before them, and cannot, with any propriety, be extended to apply to other facts and circumstances, not in the mind of the judge, when the language is used. Many of the expressions of Ld. MANSFIELD and Ld. KENYON in the early cases on this subject,—as that the goods must come to the corporal touch, or to the *actual* possession, of the vendee, in

the confined sense of that term, have been found inapplicable to the facts of other cases, which have since occurred, and have, in consequence, been disregarded. And the general *dicta* of other subsequent judges have been and must be measured and treated in like manner.

The cases cited and relied upon by the plaintiff's counsel, where the transit was held not to have terminated, will, I think, all be found to fall within one or the other of the following classes;—1. Cases in which it has been held, that the right of stoppage existed, where the goods were originally forwarded on board of a ship chartered by the vendee; *Bohtlingk* v. *Inglis*, 3 East 381, and *Stubbs* v. *Lynde*, 7 Mass. 453;—2. Where the delivery of the goods to the vendee has been deemed incomplete by reason of his refusal to accept them; *Bartram* v. *Farebrother*, 15 E. C. L. 79; *James* v. *Griffin*, 2 Mees. & Welsb. 623;—3. Where goods remained in the custom house, subject to a government bill for duties; *Northey* v. *Field*, 2 Esp. R. 613;—4. Where they were still in the hands of the carrier, or wharfinger, as his agent, subject to the carrier's lien for freights; *Crawshay* v. *Eades*, 8 E. C. L. 53; *Edwards* v. *Brewer*, 2 M. & W. 375;—5. Where the goods, though arrived at their port of delivery, were still on ship board, or in the hands of the ship's lighterman, to be conveyed to the wharf; *Naylor* v. *Dennie*, 8 Pick. 198; *Jackson* v. *Nicholl*, 35 E. C. L. 202; *Whitehead* v. *Anderson*, 9 Mees. & Welsb. 518; *Tucker* v. *Humphrey*, 15 E. C. L. 63;—6. Where the goods had performed part of their transit, but were in the hands of a middle man, to be forwarded on by other carriers; *Mills* v. *Ball*, 2 B. & P. 457; *Smith* v. *Goss*, 2 Camp. 282; *Ellis* v. *Hunt*, 3 T. R. 467; *Hodgson* v. *Loy*, 7 T. R. 436; *Coates* v. *Railston*, 13 E. C. L. 223; *Buckly* v. *Furness*, 15 Wend. 137.

If, in the present case, the goods, when landed on the wharf, had been in the custody of the wharfinger, the question would have arisen, whether he held them for the carriers, as a middle man, or as the agent of the consignee; and the right of the consignor to stop them would probably have depended upon the character, in which the wharfinger was found to act. But the jury, under the charge of the court, have excluded that question from our consideration, by finding that the wharfinger had no charge of the goods whatever.

If the goods had been consigned to a place in the interior, beyond Vergennes, and had remained in the hands of the wharfinger at the latter place, possibly the case might be still more variant from the present. Upon any such altered state of facts no opinion is intended to be expressed. In the case at bar the ultimate place of destination of the goods, under the direction and impulse given them by the consignor, was Vergennes. Our decision merely declares, that the usual place of the consignee's receiving goods in that town, and where they were in point of fact placed for him by the carriers, was the place of their ultimate destination, named by the consignor, and that, there being no middle man in the case, the goods, when they passed from the hands of the carriers, came into the constructive possession of the vendee, and were beyond the bounds of the vendor's right to enforce his original lien upon them.

The judgment of the county court is affirmed.