June Term,
1860.

Hoover
v.
Tibbits et al.

| 13 | 79 |
| 93 | 259 |

## Hoover vs. Tibbits and others.

The vendors' right of stoppage *in transitu* continues until there has been an actual or constructive delivery of the goods to the vendee.

If the goods are forwarded by direction of the vendee to a particular warehouseman, who in receiving them acts as the agent of the *vendee*, the *transitus* is at an end.

But where the warehouseman to whom the goods are directed to be sent, receives them as the agent of the *carrier*, and while he is holding the goods as such agent for the purpose of collecting freight and charges, the vendor asserts his right of stoppage, the goods will not be considered as in the possession of the vendee, so as to cut off that right.

June Term,
1860.

HOOVER
v.
TIBBITS et al.

There being some evidence in this case tending to show that the warehouseman received the goods as agent of the carrier, and held them as such at the time the vendor asserted his right to stop them as *in transitu*, it was erroneous to instruct the jury, that if the vendee directed the goods to be sent to that warehouseman, and the goods arrived there in pursuance of that direction, they had come into the possession of the vendee so as to deprive the vendor of the right of stoppage. The jury should have been left free to determine upon all the evidence, whether the warehouseman received the goods as the agent of the carrier, or as the agent of the vendee.

APPEAL from the Circuit Court for *Milwaukee* County.

This was an action to recover possession of six casks of zinc paint from the defendants, who were warehousemen in the city of Milwaukee. About the middle of July, 1859, one Enoch Haskin, then a merchant in the city of Milwaukee, purchased the paint of Manning & Squier in the city of New York, on six months' credit. Manning & Squier shipped the paint by Poag, Farmer & Co.'s Express, to Enoch Haskin at Milwaukee, to the care of the defendants in that city, and it came into the possession of the defendants on the 28th of July. On the afternoon of the 30th of July, the plaintiff, who claimed to have purchased the paint from Haskin on that day, demanded possession of it from the defendants, having first offered to pay the charges on it, but the defendants refused to deliver the paint. The defense was, that Enoch Haskin became insolvent on the 27th of July, his stock of goods having been levied upon on that day, under executions for a large amount; that the defendants had received the paint as the agents of Poag, Farmer & Co., and before the plaintiff had made such demand, had taken possession of said paint while *in transitu*, for Manning & Squier, by virtue of instructions from them and from Poag, Farmer & Co.; and also that the pretended sale to the plaintiff was fraudulent.

On the trial, J. W. Haskin testified that he purchased the paint for Enoch Haskin, and gave special directions to Manning & Squier to have it shipped to the defendants, whom he considered as the agents of Enoch Haskin for the receipt of the same. *J. E. Starkweather*, one of the defendants, testified that while doing a general business as warehousemen, forwarders and commission merchants, they were

the agents at Milwaukee, of Poag, Farmer & Co.'s Express; that they received the paint in question as such agents; and that until the reception of a dispatch from Poag, Farmer & Co., on the 30th of July, notifying them to detain the paint, they did not know to whom it belonged, there being no package on the bill of lading which they had received, described by the mark that was on the casks of paint.

The defendants asked the circuit judge to instruct the jury, "that the property in question was *in transitu* and subject to the right of the vendors to stop it, and repossess themselves of it, on the insolvency of the vendee, not only while being transported from New York to Milwaukee, but while it remained in the possession of the defendants, *either as warehousemen or as agents of the carriers.*" The judge refused this instruction, but gave the one which is stated in the opinion of the court.

Several other questions were presented by the record and argued by counsel; but as they were not passed upon by this court, a statement of them is unnecessary.

*Butler & Martin,* for appellants.

*Coon & Cotton,* for respondent.

*By the Court,* COLE, J. The real question presented by the pleadings and evidence in this case, was as to the right of the vendors of the property to stop it in the hands of the appellants. The principle of law would not be controverted, that the vendors' right of stopping the property continued until there had been an actual or constructive delivery thereof to the vendee. The point of inquiry before the jury then was, whether the property was still to be considered in its transit, or whether it had arrived at its place of destination and had come into the possession or under the direction of the vendee himself. The solution of this question would depend upon the further inquiry—In what capacity did the appellants receive the goods? Were they simply the *consignees* or agents of the transportation company, receiving and holding the property *as such* for the purpose of collecting the freight, or any other lawful object, so that the property was still in the possession of Poag, Farmer & Co.?

The relation of principal and agent might unquestionably exist between the appellants and the carriers in respect to this identical property, so that the vendors could still assert their right of stoppage *in transitu* because the property was yet in the possession of the carrier. Now this material inquiry, as to whether the appellants were the agents of the carriers and received and held possession of the goods *as such*, was taken from the consideration of the jury by the general charge of the circuit court, and by its refusal to instruct the jury upon that point as asked by the appellants. The circuit court, in its general charge, said: "Written instructions to the jury have been presented to me by the counsel on both sides, and I am asked to charge you in pursuance of these instructions; instead of which I prefer to disregard the instructions, and in place of the same to present to you only one question, which I consider the only question in the cause, and that is, that if you find that Joseph W. Haskin, at the time of the purchase, directed the vendors to ship the goods to *Tibbits, Starkweather & Co.*, warehousemen at Milwaukee, and the goods arrived there in pursuance of such directions, then I charge that when they came into the possession of *Tibbits, Starkweather & Co.*, they were in the vendee's possession so far as to deprive the vendors of the right of stoppage; and in that case your verdict must be for the plaintiff for the value of the paint. And if you find that no such direction was given, then your verdict must be for the defendants." Now, although J. W. Haskin testified that at the time he purchased the lead of Manning & Squier, he gave special directions to them to have the goods shipped to *Tibbits, Starkweather & Co.*, of Milwaukee, warehousemen, whom he considered as the vendee's agents for the receipt of the same, still, one of the appellants, *Starkweather*, testified that they were agents, in July and prior to that time, of the carriers, Poag, Farmer & Co.'s Express, and that at the time they received the goods, they received them as the agents of Poag, Farmer & Co.; and it is clear from the whole case, that one of the points in controversy between the parties was as to the capacity in which the appellants were acting when they received the property.

June Term,
1860.

HOOVER
v.
TIBBITS et al.

For if the appellants were really acting as agents for the vendee, then when the goods arrived at their warehouse and were received by them, the property would be in the possession of the vendee, the *transitus* would be at an end, and the vendors' right of stoppage be extinguished. While on the other hand, if the appellants received the goods as agents for Poag, Farmer & Co., as they might have done for the purpose of collecting freight and charges due upon them, and, while holding them as such agents, the vendors asserted their right of stoppage, then the goods would not be considered in the possession of the vendee so as to cut off this right.

It will at once be seen that the circuit court, in the charge it gave, excluded from the consideration of the jury the question as to whether the appellants received the goods as agents of the carriers or not. For the jury were told that if at the time of purchase, Joseph W. Haskin directed the vendors to ship the goods to *Tibbits, Starkweather & Co.*, warehousemen at Milwaukee, and the goods arrived in pursuance of such directions, then, as a matter of law, the court held that when the property came to the possession of *Tibbits, Starkweather & Co.*, it was in the vendee's possession, so far as to deprive the vendors of the right of stoppage.

It appears to us that this instruction was erroneous, in assuming that the appellant necessarily received the goods as the agents of the vendee, and in no other capacity, provided they had been shipped to them by the vendors in pursuance of directions given by J. W. Haskin at the time of purchase. For notwithstanding these directions were given, and the goods were shipped in pursuance of them, the appellants might have received and held possession of them strictly as the agents of the carrier. Whether they did so receive them or not, was a most important fact in the case, to be determined by the jury from the evidence.

Now although, in the language of Chancellor KENT, (2 Comm., side paging, 545) "there has been much subtlety and refinement on the question, as to the facts and circumstances which would amount to a delivery sufficient to take away the right of stoppage, the point of inquiry being whether the

June Term, 1860.

property is to be considered as still in its transit," when it is held in the hands of the carrier, or of the wharfinger as his agent, subject to the carrier's lien for freight, then the right of stoppage is said still to exist. *Crawshay and others vs. Eades*, 8 E. C. L. R., 51; *Edwards vs. Brewer*, 2 M. & W., 374. So where goods remained in the custom house subject to duties, although the freight had been paid, it was held that the *transitus* was not at an end, and the vendor could assert his lien. *Donath vs. Broomhead*, 7 Barr R., 301. See also *Turner et al. vs. The Trustees of the Liverpool Docks*, 6 Wel., Hurl. & Gordon, 543; *Van Casteel et al. vs. Booker et al.*, 2 id., 691. Of course a delivery of the goods to the appellants, as the agents of the vendee, would put an end to the *transitus*. *Allan et al. vs. Gripper et al.*, 2 Cromp. & Jer., 218; *Mottram vs. Heyer*, 1 Denio, 483; *Dodson vs. Wentworth*, 4 Man. & Granger, 555 (1080); *Sawyer vs. Joslin*, 20 Vt., 172. Therefore, the turning point in the case was, whether the appellants received the goods as the agents of the carriers, Poag, Farmer & Co., or as the agents of the vendee. Since this question was taken from the consideration of the jury by the charge of the circuit court, there must be a new trial. This renders it unnecessary to notice the other questions discussed by counsel.

Judgment of the circuit court reversed, and a new trial ordered.