NELSON MILLARD AND ANOTHER *vs.* DANIEL F. WEBSTER
AND OTHERS.

New Haven County, June T., 1886. PARK, C. J., CARPENTER, PARDEE,
LOOMIS AND GRANGER, JS.

*K,* at *W* in this state, ordered goods of the plaintiffs in the city of New
York, and they were there shipped, and reached *W,* and were deposited
in the freight house of the railroad subject to *K's* order. Later on the
day of their arrival, *K* made an assignment for the benefit of his cred-
itors under the insolvent law. Two days later, not having removed the
goods from the freight house, he re-marked them and ordered them
sent back to the plaintiffs. After this but before they were sent back
the probate court, upon *K's* assignment, ordered an officer to take
possession of his property, pending the appointment of a trustee in in-
solvency. The officer took possession of these goods while they were
being transferred to the cars to be returned to New York. Held that
there was no stoppage *in transitu* on the part of the plaintiffs.
The fact that a purchaser of goods was not able at the time to pay all his
debts if his creditors had pressed for immediate payment, is not enough
to show that he was at the time insolvent, and much less that he was
guilty of fraud in the purchase.

[Argued June 2d—decided July 27th, 1886.]

REPLEVIN for goods wrongfully detained; brought to
the Court of Common Pleas in New Haven County and
tried to the court before *Studley, J.* Facts found and judg-
ment rendered for the defendants. Appeal by the plaintiffs.
The case is sufficiently stated in the opinion.

*H. C. Baldwin* and *J. M. Sweeney,* for the appellants.

*D. F. Webster,* for the appellees.

PARK, C. J. The principal question in this case is,
whether the law regarding the stoppage of goods *in tran-
situ* applies to the case.

The facts are as follows :—On the fifth day of December,
1884, one Knapp, of the city of Waterbury, was carrying on
the business of a grocer in that city, and on that day he

ordered a quantity of goods of the plaintiffs, in good faith, believing himself solvent. The goods were sent the same day, and all responsibility for their delivery by the plaintiffs ceased when they were placed on a truck in front of the plaintiffs' warehouse in the city of New York.

The goods arrived at Waterbury during the morning of the eighth day of the same month and were stored in the freight house of the railroad company subject to the order of Knapp. In the afternoon of the same day Knapp for the first time became aware that he was unable to pay certain claims against him that were then due, and thereupon made an assignment for the benefit of all his creditors. On the tenth day of December, Knapp, without authority from the plaintiffs, re-marked the goods in the warehouse, where they had remained, to the plaintiffs' address in the city of New York, and directed the agent of the railroad company to forward them to the plaintiffs.

Immediately after these transactions had occurred the probate court for the district of Waterbury ordered a deputy sheriff of the county of New Haven to take into his possession the goods of Knapp and hold them pending the appointment of a trustee on his estate. The deputy sheriff took possession of these goods, in accordance with the order, while they were being transferred from the freight house to the cars to be carried to New York as directed by Knapp. On the fifteenth day of the same month a trustee on Knapp's estate was duly appointed, and on the same day the trustee took possession of the goods, and retained it till they were taken out of his possession by the proceedings in this case.

On the thirteenth day of the month Knapp informed the plaintiffs by letter that he was insolvent, and that the goods he purchased of them were in the freight house at Waterbury subject to their order, but the plaintiffs took no action in the premises farther than to write a letter for the return of the goods, which was never received.

At the time the goods were ordered Knapp had not prop-

erty enough to pay all the claims against him if he had then been pressed for payment.

These are the facts, and the principal question is—do they show that the plaintiffs stopped the goods *in transitu*, that is, took possession of them before they were taken possession of by Knapp, or by his representative, the deputy sheriff or the trustee in insolvency for the benefit of Knapp's creditors?

Knapp himself carefully avoided taking possession of the goods, and sought to return them to the plaintiffs; and had the plaintiffs ratified his acts before the goods were taken possession of by the deputy sheriff after the assignment, by the order of the court of probate, for the benefit of Knapp's creditors, perhaps there might have been some ground for the claim that the plaintiffs stopped the goods *in transitu* by the action of their agent; but this they neglected to do. There appears to have been no effective action whatever on the part of the plaintiffs to stop the goods *in transitu* before the happening of that event, and we see no tenable ground for the claim.

Again, it is said that Knapp was guilty of fraud in making the purchase of the goods, inasmuch as he had not property enough at the time to pay all his debts, if he had then been pressed for payment. But the case finds that the purchase was made in good faith, and that he did not then know that he could not make payment of all demands against him if his creditors should press for immediate payment. This knowledge he obtained afterwards, and then he sought to return the goods to the plaintiffs.

But the fact that he had not property enough to make immediate payment of all claims against him falls short of showing that he was then insolvent, and much less that he was guilty of fraud in the purchase. It often happens that men of large property, much more than sufficient to pay all demands against them in the ordinary course of business, have not property enough for the purpose if all their creditors should at once press for payment. We think there is nothing in this claim.

There is no error.

In this opinion the other judges concurred, except GRAN-
GER, J., who dissented.