Smith v. Gail and Murray—Syllabus.

---

GEORGE E. SMITH, PLAINTIFF IN ERROR, VS. HERBERT A. GAIL AND GEORGE E. MURRAY, PARTNERS AS HYDE & HERBERT, DEFENDANTS IN ERROR.

1. The right of a vender of goods to stop them in transitu, and thus to rescind the contract of sale, ceases whenever they have reached their destination, and the carrier of them has there parted with all possession and control of them to the vendee, receiving all the freight charges, regardless of the undisclosed mental intentions or reservations of the vendee in receiving them.

2 It appearing that H. & H., partners in New York, sold and shipped to M. C. & Son., partners at Pensacola, Florida, certain boxes of shoes, which were received at Pensacola by the managing member of the firm of M. C. & Son., from the railroad, he paying the freight thereon, and taking them into his exclusive custody, and while in his custody

the sheriff levied attachments upon them, issued against the firm of M. C. & Son; the said managing partner not having disclosed up to that time any purpose or intention of having received the goods from the carrier for H. & H. and it not appearing that H. & H. ever demanded the goods of the carrier, or of the sheriff, until after the levy was made upon them, and the sheriff had taken them into his possession, in the trial, of an action brought by H. & H. against the sheriff for the value of the goods the following charge to the jury was erroneous, viz: "If you find that that the goods was not delivered to M. Cashman & Son under the contract, as owners, before the seizure by the defendant, or if the goods came into their physical possession at all, that it was under a mistake, as to what the goods were, and that they would not have received them had they known what the goods were, and that when they discovered what they were they held them, if at all, only for plaintiffs, you will find for the plaintiffs."

This cause was decided by Division A.

Writ of error to the Circuit Court for Escambia County.

The facts in the case are stated in the oinion of the court.

*Blount & Blount,* for Plaintiff in Error.

*Liddon & Eagan,* for Defendant in Error.

HOCKER, J.

Defendants in error sued plaintiff in error and filed a declaration on April 6th, 1896, in three counts, viz: 1st. A count in trover for fifteen dozen pairs of shoes of the value of $194.00.

2nd. An indebitatus assumpsit count for money received by defendant for use of the plaintiffs in the sum of $194.40.

3rd. An indebitatus assumpsit count for money payable by defendant to plaintiffs for goods and wares bargained and sold by plaintiffs to defendant. Bill of particulars attached to declaration.

Defendant below filed the following pleas: 1. That he as sheriff of Escambia county, Florida, received from said court three writs of attachment against the firm of M. Cashman & Son, and levied said writs upon the property described in the bill of particulars attached to the declaration while said property was in the custody and control of Harry J. Cashman, a member of the firm of said M. Cashman & Son.

2. That the property sued for was not the property of the plaintiffs, when converted by defendant.

3. That the defendant was not guilty .

4. That the defendant was never indebted.

Issue was joined on these pleas.

On January 23rd, 1897, the case was tried upon the foregoing issues, and resulted in a verdict for the plaintiffs below, for $161.52, upon which judgment was entered upon the same day for said sum. Defendant below made a motion for a new trial, which was overruled, and he then sued out a writ of error from this court.

The assignments of error are: 1st. The refusal of the Circuit Judge to set aside the verdict rendered in this cause and to grant a new trial upon the grounds set forth in the motion for a new trial.

2nd. The giving of the following charge by the trial judge, viz: If you find that the goods were not delivered

to M. Cashman & Son under the contract, as owners, be-
fore the seizure by the defendant, or if the goods came
into their physical possession at all, that it was under a
mistake as to what the goods were, and that they would
not have received them had they known what the goods
were, and that when they discovered what they were, they
held them, if at all, only for plaintiffs, you will find for
the plaintiffs.

The motion for a new trial was made on the following
grounds: 1st. The verdict was contrary to law.

2nd. The verdict was contrary to the evidence.

3rd. The verdict was unsupported by the evidence.

4th. The giving by the trial judge of the charge above
recited.

The charge was predicated upon the following state of
facts, or facts which the testimony tended to prove:
"Plaintiffs, merchants in New York, sold certain boxes
of shoes to M. Cashman and Harry J. Cashman, partners
as M. Cashman & Son, doing a mercantile business in Pen-
sacola, Florida. M. Cashman resided in New York, and
H. J. Cashman resided in Pensacola, and managed the
business there. When the goods were contracted for
M. Cashman & Son were solvent, but after they were ship-
ped, and before they were delivered to M. Cashman & Son,
the said M. Cashman & Son became insolvent, and their
business broken up by reason of certain attachment suits
brought against them. When the goods were in the
railroad depot in Pensacola the drayman who usually did
the hauling for M. Cashman & Son saw H. J. Cashman
and told him there were goods for him in the depot.
Cashman told him to pay the freight on them, and gave
him a written order in his individual name for them on

the railroad company, and told him to take them to Winter Rest, a boarding house, where H. J. Cashman and his wife were then boarding, and put them where he (the drayman) had put the other goods for Cashman he had taken there for Cashman, which the drayman did. H. J. Cashman had just been married, and was receiving through the railroad household goods, wedding presents to his wife, &c., and all the other goods which he had sent to the boarding house were of this character. Cashman's store at this time was closed and in the hands of the United States marshal and the sheriff. He did not know when he told the drayman to take them to his boarding house what the goods were, but thought they were wedding presents, &c., for his wife, like the other goods sent to the house. If he had known what they were, he would not have taken them from the depot, or received them. He did not take them as owner, but regarded them as Hyde & Herbert's. Cashman was not at the house when the goods came, but saw them before they were levied on. He recognized the boxes as shoe boxes, but did not know what was in them. Shortly after they were taken to Winter Rest, and before he had examined to ascertain what the goods were, they were levied on by the deefndant, George E. Smith, as sheriff of Escambia county, under a writ of attachment against M. Cashman & Son, and taken possession of by him. Mr. Eagan, representing the vendors, Hyde & Herbert, demanded of the defendant the return of them to the vendors, which was refused, whereupon this suit was instituted."

The correctness of the charge of the trial judge depends upon whether the right of stoppage in transitu of the goods in question existed in Hyde & Herbert at the

time the goods were demanded for them of the defendant, the sheriff, who was ir possession of them under the recited facts.

We have been referred to no case, nor have we found one, which sustains the right of stoppage in transitu under the circumstances of this case. In Sawyer v. Joslyn, 20 Vt. 172, S. C. 49 Am. Dec. 768, the court speaking through HALL, J., say "by the common law, as it is now understood in England and in the several States, the unpaid vendor of goods, in case of the insolvency of the vendee, may reclaim them while on their passage to the vendee, not only against the vendee himself, but also against his creditors, by stopping them while in transit. For although the goods by being dispatched to the vendee by the usual modes of conveyance became, for other purposes, the property of the vendee, are considered in his constructive possession and at his risk, so that he and not the vendor must bring an action for their loss, or for any injury to them yet the vendor is held to have such an equitable lien on them, though out of his possession, that on learning of the insolvency of the vendee he may reclaim them while in transit to him as security for the price for which they had been sold. This right of stoppage in transitu is held not to be defeated by an attachment of or levy upon the goods as the property of the vendee *while in their transit*, and a demand of the goods by the vendor, while in the hands of a levying or attaching officer, is held a sufficient claim of them, and this without reference to the question whether the goods, but for the levy or attachment, would probably have reached the vendee and thus have destroyed the vendor's right. The levy being made, while the goods are subject to the lien of the

vendor, it is held inoperative as against him, urovided his right be made known and insisted on before an actual sale by the officer."

In the case of Langstaff v. Stix, 64 Miss. 171, 1 South. Rep. 97, Judge Arnold, in rendering the opinion of the court says: "The right of stoppage in transitu is favored in law, and may be exercised at any time until the goods have come into the actual or constructive possession of the buyer, or, as otherwise expressed, the right may be exercised as long as the goods remain in *the possesion of the carrier, as carrier.* (The italics are made by this court). Where the right of stoppage exists it is paramount to the claim of judgment or attaching creditors of the vendee, and it can not be divested by the goods being levied on under execution or attachment in favor of such creditors. Morris v. Shyrock, 50 Miss. 590. No particular mode is prescribed by law for the assertion of the right, but to do so effectually it is essential that the vendor shall *before* the goods are delivered to the vendee, give notice to the carrier or person in the immediate custody of the goods not to deliver them, and if a servant has the custody of the goods, and notice be given to his principal, it must be in time to enable him with reasonable diligence to prevent a delivery to the vendee. 2 Kent, 544; Benjamin on Sales, section 860. These conclusions are not disputed here, but it is insisted by appellants that the right of stoppage was defeated by a constructive possession of the goods by the vendee before notice was given to the carrier, or person in the immediate custody of the goods to stop them and before the attachment was levied, and in this position the law is with the appel-

lants. It was said by the court in Whitehead v. Ander-son, 9 M. & W. 517, that a constructive possesion by the vendee which supersedeas the right of stoppage exists 'when the carrier enters expressly, or by implication into a new agreement, distinct from the original contract for carriage, to hold the goods for the consignee, as his agent, not for the purpose of expediting them to the place of original destination pursuant to that contract, but in a new character, for the purpose of custody, on his account, and subject to some new or further order to be given to him. We accept this as a true and approved interpretation of what is meant by constructive possession, in a contest between the vendor and vendee, or attaching creditors of the vendee, when the right of stoppage 'in transitu' is involved.'" (Quoting authorities.)

Authority is referred to to sustain the proposition that the intent with which H. J. Cashman is said to have taken the goods from the carrier—that he "did not take them as owner, but regarded them as Hyde & Horbert's—should and did continue the right of stoppage in transitu in Hyde & Herbert even after the goods had been levied on and taken possession of by the sheriff under the attachments. James Griffin, 2 M. & W. 623.

We are of opinion that the weight of this authority is very much weakened by the very able dissenting opinion of Lord Abinger, even if it were applicable to the case at bar, which we do not admit. In the case at bar H. J. Cashman, the managing partner, took the goods from the depot, paid the freight on them had them sent to his boarding house, where they were in his sole custody. He did not indicate in any way what his intention was in receiving them, whether for his firm, or for the consign-

ors, until after the sheriff had levied on them, and could not have done so, as he did not know what the boxes contained, but supposed they contained wedding presents. He could not be supposed to have taken wedding presents from the carrier for the benefit of Hyde & Herbert. The goods were sold to M. Cashman & Son, were presumably addressed to them in shoe boxes—the boxes were seen by H. J. Cashman at his boarding house before the levy—seem to have been in his possesion several days, were not opened or examined by him or his bride. The natural curiosity which the reception of wedding presents usually evokes was not exhibited, and the only theory upon which its absence can be accounted for is that the exigency had not arisen in Mr. Cashman's relations which would have made the reception of a present of one or more boxes of shoes a matter of moment and interest. We think the facts of this case illustrate the force of Lord Abinger's dissenting opinion before referred to. We believe that the law applicable to the facts of this case is given in the Vermont and Mississippi cases, from which quotations have been made *supra*. When the goods were levied on by the sheriff the transit had ended, and the right of stoppage in transitu did not exist. As additional authorities we cite Hause v. Judson, 29 Am. Dec. 377, and note; Conyers v. Ennis, 2 Mason, 236; Millard v. Webster, 54 Conn. 415, 8 Atl. Rep. 470; Mottram v. Heyer, 1 Denio, 483.

The quoted charges ignored the principle that the right of a vendor of goods to stop them in transitu and to thus rescind the contract of sale ceases whenever they have reached their destination and the carrier of them has there parted with all possession and control of them

to the vendee, receiving all of its freight charges, regardless of the undisclosed mental intentions or reservations of the vendee in receiving them.

The judgment of the Circuit Court is reversed and a new trial awarded. The costs of this cause to be paid by defendants in error.