CHARLES F. JOHNSON, Assignee,

vs.

JOHN H. EVELETH.

Kennebec.    Opinion December 7, 1899.

*Sales. Stoppage in Transitu. Spec. and Priv. Laws, 1885, c. 402.*

The right of stoppage in transitu is merely an extension of the lien for the price which the vendor has, after contract of sale and before delivery of goods sold on credit. The term itself implies that the goods are in transit, and that they have not come into the possession of the vendee. It permits the vendor to resume possession before the goods sold have come into the vendee's possession, if the latter has become insolvent. The transitus is not at an end until the goods have reached the place contemplated by the contract between the buyer and seller as the place of their destination. Property sold on credit may have been delivered so as to effect title, and yet not have come

into the possession of the vendee so as to bar the right of stoppage in transitu. The vital question is, are the goods in transit between the vendor and vendee.

Where logs are bargained and sold, to be delivered " over the dam " at the outlet of Moosehead lake, thence to be driven by the Kennebec Log-Driving Company to the purchaser's booms and mill, *held;* that the right of stoppage in transitu remains in the vendor until the logs come into the actual possession of the vendee; and the vendee having become insolvent in the meantime, the vendor has the right to resume the possession of the logs.

Also, *held;* that the right of stoppage in transitu is not lost, as to the logs still being driven, although some portion of the logs sold have drifted into the possession of the vendee.

ON REPORT.

This was an action of trover brought by the plaintiff as assignee in insolvency of Edward Ware to recover the value of 7936 spruce logs of the value of $7812.54. The action came on for trial at the October term, 1898, of the supreme judicial court in Kennebec county; but after the testimony had been partly taken out it was, by agreement of counsel, reported to the law court to render such judgment, upon so much of the evidence as is admissible, as the rights of the parties require.

The defendant pleaded the general issue with the following brief statement, of special matters of defense, alleging that "the defendant will show that any such alleged purchase was procured by fraud and without consideration; and that said pretended purchase was on credit and that at the time same was made said Ware was insolvent and knew he was insolvent; and that he did not at the time of the alleged purchase intend ever to pay for said logs, and that said defendant, on learning of such insolvency and fraudulent intent, promptly rescinded said pretended sale. And that said logs were sold by the defendant to said Ware, on credit, and were never delivered by said defendant to said Ware, or to the plaintiff, but were delivered by the defendant to the Kennebec Log-Driving Co., a common carrier, from Moosehead lake to the ocean, to be carried from the dam at the outlet of Moosehead lake to said Ware's boom in Winslow; and that as soon as the defendant learned of the failure of said Ware, to wit, on May 25, 1898, he resumed possession of said logs, at a place called Shawmut, in the town of Fairfield, while they were in transit to said Ware and in the possession

of said common carrier, and before they got into the actual possession of said Ware.

*Chas. F. Johnson*, for plaintiff.

If Ware knew or had reasonable grounds for believing that he was insolvent when these logs were purchased, that would not afford a legal reason for a rescission by the defendant of the contract of sale. *Burrill* v. *Stevens*, 73 Maine, 395.

The second ground of defense is wholly inconsistent with the first, because if the logs were stopped by the defendant by virtue of his right of stoppage in transitu, there was no rescission of the contract of sale. *Newhall* v. *Vargas*, 13 Maine, 93; *Vargas* v. *Newhall*, 15 Maine, 314.

If, therefore, the defendant rescinded the contract because of fraud practiced by Ware, he cannot avail himself of this second ground of defense.

But if the contract were not rescinded by the defendant, the plaintiff contends that the right of stoppage in transitu could not be exercised in this case, because the place of delivery specified in the contract of sale had been reached and the transit was at an end when the logs were turned over the dam at the East Outlet of Moosehead Lake, and they were then in the constructive if not actual possession of Ware. The contract contained no provision for a delivery to the Kennebec Log-Driving Company for transportation to Ware's Mill at Winslow.

In *Muskegon Booming Co.* v. *Underhill*, 43 Mich. 629, the court held in a similar case that when the Muskegon Booming Company took control of the logs for the purpose of driving them, this amounted to a delivery to Eldred & Company and cut off the defendant's right of stoppage in transitu.

The same court has also decided that a company charged with the duty of driving logs is not a common carrier. *Mann* v. *White River Log and Booming Co.*, 46 Mich. 38.

Admitting, however, that the right of stoppage in transitu might apply to logs which were being driven by the Kennebec Log-Driving Company to the same extent as to carriers of goods, the defendant in this case could not avail himself of that right because the

transitus was ended when the logs were delivered over the Moosehead Lake Dam. *Brooke Iron Co.* v. *O'Brien*, 135 Mass. 446; *Mohr* v. *B. & A. R. R.* 106 Mass. 70; *Dixon* v. *Baldwen*, 5 East, 175; *Guilford* v. *Smith*, 30 Vt. 49; *Rowley* v. *Bigelow*, 12 Pick. 307; 23 Am. & Eng. Ency. of Law, p. 913; *Becker* v. *Hallgarten*, 86 N. Y. 167; *Aguirre* v. *Parmelee*, 22 Conn. 473; *Sawyer* v. *Joslin*, 20 Vt. 172.

Where goods are left with the carrier to await a destination to be given to them by the purchaser the transit is at an end. Cases supra. A delivery of part of an entire parcel, or cargo, with an intention on the part of the vendee to take the whole, terminates the transitus and the vendor cannot stop the remainder. 2 Kent's Com. 9th Ed. p. 746.

While all the logs had not been delivered to Ware over the lake dam according to the contract of sale, before he made an assignment to the plaintiff, yet two rafts had been delivered there before that time, and some of the logs which they had contained had reached Ware's boom at Winslow; and a delivery of part would pass the title to the whole. *Boynton* v. *Veazie*, 24 Maine, 286; *Kohl* v. *Lindley*, 39 Ill. 195, (89 Am. Dec. 294); *Jewett* v. *Warren*, 12 Mass. 300.

The title to the logs in the raft, which was not turned over the dam until June 1, 1898, therefore passed to the plaintiff by virtue of the assignment.

*W. T. Haines and H. D. Eaton*, for defendant.

Counsel argued: 1st. The plaintiff cannot maintain the action in any event. 2nd. The pretended sale of the logs by Eveleth to Ware is not valid, and the same is fraudulent and therefore void. 3rd. Eveleth had the right to stop the logs in transit from Moosehead Lake dam to Ware's mill in Winslow, after the insolvency of Ware.

Where a sale is made or agreed upon, and there is nothing said about payment, the law will assume that payment is to be made on delivery; and upon a failure to comply with the request thereof, the seller may retake possession of his goods, although he has actually delivered them. *Peabody* v. *MaGuire*, 79 Maine, 585; *Hill* v.

*Hobart,* 16 Maine, 168; *Genin* v. *Tompkins,* 12 Barb. 275. Where delivery and payment are to be concurrent and payment is not made, the title does not pass to the purchaser. *Goslin* v. *Campbell,* 88 Maine, 450; *Ballantyne* v. *Appleton,* 82 Maine, 573; *Furniture Co.* v. *Hill,* 87 Maine, 22.

How can the seller deliver half the goods and not be subject to the conditions of full delivery, and the buyer half the notes he agrees to, and not be subject to the conditions to deliver them all as he agreed to do? The taking of a check—for goods—which is protested and not paid does not ordinarily operate as payment and prevent seller from retaking his goods. *Natl. Bank of Commerce* v. *C. B. & N. Railroad Co.* 44 Minn. 224. So as to buyer's note. *Davidson* v. *Davis,* 125 U. S. 91.

If the condition of payment is not fully complied with, or is waived, the original vendor's right becomes perfect and absolute. *Calcord* v. *McDonald,* 128 Mass. 470; *Brown* v. *Haynes,* 52 Maine, 578; *Carter* v. *Kingman,* 103 Mass. 517.

Purchasing goods with the intention not to pay for them is a fraud, which will render the sale void and entitle the vendor to obtain the goods from vendee or any subsequent purchaser, with notice, or without consideration, although there were no fraudulent misrepresentations or false pretenses. *Wiggin* v. *Day,* 9 Gray, 97; *Dow* v. *Sanborn,* 3 Allen, 181; *Burrill* v. *Stevens,* 73 Maine, 395.

"Where a party, by fraudulently concealing his insolvency and his intent not to pay for goods, induced the owner to sell them to him on credit, the vendor, if no innocent third party has acquired an interest in them, is entitled to disaffirm the contract and recover the goods.

"The defeasible title of the vendee to the goods so acquired vests in his assignee in bankruptcy, and is subject to be determined by the prompt disaffirment of the contract by the vendor." *Donaldson* v. *Farwell,* 93 U. S. 631.

Fraud may be committed by the artful and purposed concealment of facts exclusively within the knowledge of one party and known by him to be material, and where the other party has not equal means of information. *Prentiss* v. *Russ,* 16 Maine, 30.

The defense set up in this case is, that Ware artfully and purposely concealed his purpose, and had it been known would have had a material influence upon the contract.

The court says in *Ingersoll* v. *Barker*, 21 Maine, 474: "Fraud is almost always a matter of inference from circumstances. Direct proof of it can seldom be expected."

Insolvency is the basis of the right of stoppage in transitu; and by reason of the justice and equity, which will not allow one man's goods to be taken and applied to the payment of another man's debt. This right can only be exercised by the seller or some one standing in his place.

Part payment by the buyer only diminishes the claim pro tanto on the goods stopped, and does not affect the seller's right of stoppage for the proportion of the price remaining unpaid, nor is he, in order to exercise this right, bound to refund what he may have received in part payment.

In *State* v. *Peters*, 91 Maine, 31, it is decided, and reaffirming the doctrine of *State* v. *Intoxicating Liquors*, 73 Maine, 278, that "delivery to the carrier designated by the consignee was delivery to the consignee subject to vendor's lien. . . . . The title passes to the vendor, when the bargain is struck, subject to fraud, and loss of property by accident would have been loss to buyer or consignee." But this does not affect the right of stoppage in transit. It is not a question of title; it is a lien effected by taking possession in case of insolvency when goods are passing to the actual possession of vendee, and while in the carrier's hands.

Hence, if the court should decide that the sale was completed, the right to stop the logs remained under this doctrine, upon Ware becoming insolvent, while they were passing to his boom. *Hurd* v. *Bickford*, 85 Maine, 217.

The delivery into the "Kennebec waters" or "over the dam," or "into the corporation"—as this case shows to have been done—was in the same line as a delivery "free on board." It meant that Eveleth was to pay all expenses on logs to this point and nothing more. *Ex parte Rosevear China Clay Co.*, 11 Ch. D. 560, C. A.

Mr. Eaton argued that the plaintiff took no title to the logs because the insolvent court had no jurisdiction to entertain the petition of Ware at the time it was filed, viz: July 8, 1898.

The National Bankruptcy Act was approved and went into effect July 1, 1898. The effect of that act was to supersede all state insolvency laws from and after its passage. In *Parmenter Mfg. Co.* v. *Hamilton*, 172 Mass. 178, the court says: "The only saving clause affecting the jurisdiction of state courts provides for cases commenced in those courts before the passage of the act. The plain implication is that proceedings commenced in the state courts after the passage of the act are unauthorized. This is in accordance with the earlier language giving the statute full force and effect from the time of its passage, except that the filing of petitions is to be postponed for a short time. We are of opinion that the language was chosen to make clear the purpose of congress that the new system of bankruptcy should supersede all state laws in regard to insolvency from the date of the passage of the statute."

And this decision has been approved by the Federal courts *in re Gutwillig*, 90 Fed. Rep. 475, and the same doctrine has been affirmed in the cases *in re Bruss-Ritter Company*, 90 Fed. Rep. 651; *in re Lewis*, 91 Fed. Rep. 632; *in re Curtis*, 91 Fed. Rep. 737; *in re Smith*, 92 Fed. Rep. 135.

In the last case it is held that: "The assignee under the inoperative state law takes no title as against the creditors by the deed of assignment; and all of his acts touching the estate of the bankrupt, as well as all acts by the state court in the administration of the same, are unauthorized and void, and will be treated as nullities wherever drawn in question. . . . . "It follows that the assignee is a mere naked bailee for the creditors, without a shred of title or lawful authority to the possession of the bankrupt's estate; . . . . "but where the possession and only right of possession are under the authority of a state court by virtue of a general assignment for the benefit of creditors, no contestable question is presented."

The proceedings in insolvency did not commence in legal contemplation until the day of the filing of the petition. *Wells* v. *Brackett*, 30 Maine, 61; Stat. 1897, c. 325, § 1.

SITTING: EMERY, HASKELL, WISWELL, STROUT, SAVAGE, FOGLER, JJ.

SAVAGE, J.    This case comes up on report.    We think the evidence shows the following facts:— On March 22, 1898, one Edward Ware entered into a contract of bargain and sale with the defendant for the purchase of about one million feet of logs, numbering 7663 sticks, then lying in Spencer Pond, above Moosehead lake.    It was agreed that the logs should be delivered by the defendant "over the dam," at the East Outlet of Moosehead lake, into Kennebec waters.    From that point they were to be driven down the Kennebec river by the Kennebec Log-Driving Company. Ware had booms in Fairfield and Winslow, and a mill at the latter place.    The logs were bought by Ware for the purpose of being manufactured into lumber at his mill in Winslow.    On May 25, 1898, Ware assigned to the plaintiff for the benefit of his creditors, under the provisions of the insolvent law.    Laws of 1897, chap. 325, § 16.    He was, and for a long time had been, hopelessly insolvent.    In the meantime, the defendant had caused a large portion of the logs to be delivered "over the dam" at the East Outlet, and they were being driven down the Kennebec river towards Ware's booms and mill.    Some scattering logs had already reached Ware's mill and had been sawed.    They had drifted down the river, without the necessity of being driven.    But the drive proper did not reach Fairfield or Winslow until the last of August, 1898.    When the drive reached "Shawmut," above the Fairfield boom, August 22, the defendant took from the river all the logs he had sold to Ware which then remained in the drive, numbering 6815 sticks, and surveying 808,032 feet.    And it is for this taking and alleged conversion that the plaintiff has brought this action of trover.    Ware agreed to give four notes for the price of the logs, maturing at different times.    At the time of his assignment he had given one note to the defendant, which was subsequently protested for non-payment, and then tendered back by the defendant to the plaintiff.    The other three notes he never gave.

The defendant asserts several grounds of defense, only one of

which do we think it necessary to consider. He says he took the logs from the river in the exercise of the right of stoppage in transitu. He claims that the log-driving company was a carrier. He says he sold the logs on credit, and that while they were in transit to their ultimate destination in Winslow and were in the possession of the log-driving company as a carrier, the purchaser became insolvent. And this fact, he says, gave him the right to resume the possession of the logs at any time before they came into the actual possession of Ware, or came to their destination in Winslow.

In reply, the plaintiff says (1) that the log-driving company was not a carrier, or middle man, in such a sense as gave it possession or control of the logs; that the river was the real carrier; that the company provided no means of conveyance or motive power, but simply facilitated the floating of logs down the river by breaking jams and otherwise, and hence that after the logs passed out of the possession of the defendant by being turned "over the dam," they must have been constructively, at least, in the possession of Ware, while floating upon the river; and furthermore, that in any event, the log-driving company was really only an association of log owners, of whom Ware was one, and that a delivery of the logs to the company was in effect a delivery into the possession of Ware; (2) that by the terms of the contract between Ware and the defendant, the "destination" of the logs was "over the dam" at the East Outlet, and that when they were so delivered, the "transitus" was at an end; and (3) that the facts that some of the logs had floated down the river to Ware's mill and had been received and sawed by him constituted a constructive delivery of the whole mass into his possession.

These contentions make it necessary for us to consider the character and duties and method of operation of the Kennebec Log-Driving Company. Its charter and by-laws are made a part of the case. By the charter, Laws of 1885, Chap. 402, certain persons named, their associates and successors, are constituted "a body politic and corporate" and may sue and be sued, etc. They have power to adopt all necessary regulations and by-laws. "They shall

drive to such place of destination on the Kennebec River as may be designated by the owners, or by the directors of said company, and may secure and form into rafts, under rigging, all logs and other timber belonging to said company, or any member thereof, that may be in the East Branch and Kennebec River, for that purpose, below the outlet of Moosehead Lake at the dam." "They may remove obstructions, and erect booms, piers and dams." Sect. 1. "Any person, persons or corporations, or their agents, owning logs or other timber to be driven on said rivers at the date of the annual meeting in each year, shall be members of the Kennebec Log-Driving Company, and shall so continue for two years at least from that date." Sect. 3. Members owning logs to be driven are required to file a correct statement of all such logs or timber, giving the number of feet, with the marks, and the place from which logs are to be driven and their destination. The expenses of driving, and for damages, and losses, are to be assessed upon the owners of the logs driven, and the payment of assessments is secured by a lien upon the logs. Section 4. The company may collect logs or timber remaining in booms or in any place exposed to loss, and deposit the same in suitable places and properly secure it from loss, and to pay for this service an assessment may be made. Sections 10, 11, 12 and 13. "The private property of each member of said company shall be holden to pay all debts contracted by the company after he became a member thereof, and before his withdrawal from the same, in default of company property whereon execution may be satisfied." Section 16.

By these extracts from its charter, it appears that the Kennebec Log-Driving Company is a corporation. It is more than a mere association of log owners. To be sure, all owners of logs to be driven are, by force of the statute, members, but all combined are only one corporate body. The corporation and its members are different persons. Hence it follows that a possession by the corporation is not a possession by a member, unless the corporation has been made an agent for that purpose. In this case the corporation does not appear to have been the agent of Ware for any

purpose. It was simply performing its corporate duty in receiving and driving the logs. It did that under its charter and not as agent. In this respect this case is unlike *Muskegon Booming Co.* v. *Underhill,* 43 Mich. 629, cited by the plaintiff. There the logs in question had failed to get into the booming company's main drive and had been left in the rear. The vendees engaged the booming company to send back and get the logs, which they did. The vendees having become insolvent before the logs reached their mill, the vendor, Underhill, sought to exercise the right of stoppage in transitu. The court denied this right, but rested its decision on the ground that the vendor, by his contract or acquiescence "virtually offered possession to vendees" . . . . "and that the vendees accepted the offer and virtually took possession by having the logs taken into custody at their expense and on their account as owners, by the booming company." Our conclusion is, therefore, that the possession by the log driving company was not possession by Ware.

The next question in this connection is, may the right of stoppage in transitu attach to logs being driven as these were. We have no doubt that it may. It may be conceded that the log-driving company is not a common carrier, although in some respects its duties are analogous to those of common carriers. See *Mann* v. *White River Log,* etc., *Co.,* 46 Mich. 38, where the distinction is pointed out. But that is not decisive. When a vendor sends goods sold to the place of destination by private conveyance, the right of stoppage in transitu exists the same as if they are sent by common carrier. The vital question is, are they in transit between the vendor and the vendee. The right of stoppage in transitu is merely an extension of the lien for the price which the vendor has, after contract of sale and before delivery of goods sold on credit. The term itself implies that the goods are in transit, and that they have not come into the possession of the vendee. It permits the vendor to resume possession before the goods sold have come into the vendee's possession, if the latter has become insolvent. Whether they are in the possession of a carrier, strictly so called, while in transit, or whether they are in possession of a "middle-man," is

immaterial. 2 Kent's Com. 702. In this case the logs were certainly in transit between the dam at East Outlet and Ware's mill. They were moving down the river. They were kept moving by the agency of the log-driving company. The company broke the jams, cleared the eddies and the banks of logs, took them wherever they became stranded, and drove in the rear. The company having assumed the duty of driving the logs, no one else had the right to interfere with the driving. So far as a mass of logs in a river is susceptible of possession, to that extent the log-driving company was in possession of these logs for the purpose of transporting them. And we think that was sufficient. It certainly accords with the equitable principles out of which the right of stoppage in transitu has grown. *Newhall* v. *Vargas*, 13 Maine, 93. The character of the possession of the log-driving company is only important as it shows that the logs had not come into the possession of the vendee, and were still in transit.

But the plaintiff next contends that, so far as this case is concerned, the transitus ended when the logs were turned " over the dam " at East Outlet, because, he says, that was the ultimate destination of the logs, within the meaning of the contract of purchase; that the defendant's agreement was to deliver the logs there, and that when the logs were so delivered, the transitus contemplated by the contract was at an end; and that in any further transit, the right of stoppage in transitu would not exist. This might be true, if by any fair construction of the contract, read in the light of surrounding conditions and circumstances, we could understand that the dam was really the contemplated final destination of the logs, or that the logs were to be delivered at the " dam," and there remain subject to further acts or directions of Ware. *Becker* v. *Hallgarten*, 86 N. Y. 167. But we cannot interpret the contract so narrowly. We must view the situation as the parties did. We cannot shut our eyes to the fact that these logs at the time of the contract were above the dam and above a portion of Moosehead Lake; that they were bought to be manufactured in Ware's mill in Winslow; that they must float or be driven down the river all the distance between those points; that it was

expected that they would be driven by the log-driving company; that there was no place of deposit at the "dam," for keeping the logs, but that the transit in the lake above the dam and in the river below was actually continuous, the dam being simply the point where the defendant ceased to drive and the company began. In view of these circumstances, should "over the dam" be regarded as the "destination" of the logs? We think not.

The question here is not whether the turning of the logs "over the dam" was a delivery, such a delivery as would have vested title in the vendee, in case delivery was necessary. It is not a question of title. We assume that Ware had the title to the logs. The defendant bases his right of stoppage in transitu upon that fact in part. The exercise of that particular right presupposes that the title of the goods is in the vendee; and further, the title remains in the vendee even after the exercise of the right. The title is not changed. *Hurd* v. *Bickford*, 85 Maine, 217. The question here is whether by the delivery at the dam, the logs came into the possession of the vendee; and so far only as the delivery at the dam throws light upon this question is it material. The distinction, in a word, is that property sold may have been delivered so as to effect title, and yet not have come into the possession of the vendee so as to bar the right of stoppage in transitu. An illustration of this is found in the common class of contracts where the vendor agrees to deliver to a carrier designated by vendee, for shipment to vendee's place of business. A delivery to a carrier under such circumstances vests title in the vendee and places the goods subject to his risk, but the vendor does not lose his right of stoppage in transitu while the goods are in transit to the vendee. *Grout* v. *Hill*, 4 Gray, 361; *Rowley* v. *Bigelow*, 12 Pick. 307; *Gibson* v. *Carruthers*, 8 M. & W. 321. In a case where goods were delivered to the purchasing agent of the vendees to be transmitted to the vendees' factory in another state, it was held that the right of stoppage in transitu was not barred. The court said that the delivery of the goods was to the agent, not as owner, nor as agent of the owners to dispose of them in any other way than to transmit them to the vendees' place of business, and that to take

away the right of stoppage in transitu there must be an absolute delivery to the agent for the use of the vendees, and it must have been a full and final delivery, as contradistinguished from a delivery to a person acting as a carrier or forwarding agent to the principal. *Aguirre* v. *Parmelee*, 22 Conn. 473. To terminate the transitus by delivery to a middle-man, it must be a delivery not to transport, but to keep. *Guilford* v. *Smith*, 30 Vt. 49. See our own case of *Newhall* v. *Vargas*, supra. It was held in *Mohr* v. *Boston & Albany R. R.* 106 Mass. 67, that the transitus is not at an end until the goods have reached the place contemplated by the contract between the buyer and seller as the place of their destination.

As bearing upon the "destination" of the logs, the plaintiff, in argument, suggests that under the charter of the log-driving company, the owner of the logs was required to file with the company a statement of their destination, which was not done, and also that the company does not itself take logs from the river, but the owners separate them from the general drive and boom them, or take them out, at such points as they please. To these suggestions, it is a sufficient answer to say that it is clear that the intended destination of these logs was at Ware's mill, and that whatever the rights of Ware to stop the logs or take them out of the river may have been, he did not exercise them. He did not take possession of the logs while they were in transit.

Finally, the plaintiff contends, inasmuch as some small portion of the logs had floated down to Ware's mill and had been received by him before his assignment, that this put him in constructive possession of the whole mass, and terminated the transitus. We are unable to come to that conclusion. The surveyor's bill shows that there were 7663 sticks in the lot of logs purchased. The defendant, when he took possession, found 6815 sticks in the drive. It appears that some had gone below Ware's mill to Hallowell, and undoubtedly some sticks had been left behind, upon the banks or in the eddies of the river. But assuming that the whole of the remaining 848 sticks had, during the season, floated down to or by Ware's mill, still we do not think that that fact constituted a con-

structive possession in Ware, or the plaintiff, of the logs which had not come down. It is not like the case where a vendee has taken some portion out of the whole mass, which was then susceptible of possession, and in which case he has thus obtained constructive possession of the whole. Such facts are important sometimes when it is necessary to decide whether a legal delivery has been made. But here, as we have said, it is not a question of technical delivery, but one of actual possession. Here Ware took only such scattering, floating logs as came to him. The remainder were not in his possession. They were still in the possession of the log-driving company. They were still being driven. They were still in actual transit. And we think the vendor had the right to stop them before that transit was ended. Such a conclusion gives effect to the spirit and purpose of the law. *Buckley* v. *Furniss,* 17 Wend. 504; *Mohr* v. *Boston & Albany R. R.* supra.

*Plaintiff nonsuit.*