### In re ARCTIC STORES.

### Petition of WILLIAM SILVER & CO.

(District Court, D. New Jersey. June 17, 1919.)

1. SALES ⟨key⟩201(4)—PASSAGE OF TITLE—GOODS SOLD ON CREDIT.

Where tomato pulp was sold on credit, title thereto passed to the purchaser on delivery of the pulp to the carrier for transportation.

2. SALES ⟨key⟩299—PASSAGE OF TITLE—STOPPAGE IN TRANSITU.

While the right to stop delivery of goods sold on credit is predicated on the insolvency of the buyer, neither insolvency nor bankruptcy of the buyer works a rescission of the contract of sale, and an effective stoppage in transitu does not in itself annul the sale or divest the purchaser of the title to the goods, which has passed on delivery to the carrier.

3. SALES ⟨key⟩296—STOPPAGE IN TRANSITU—EFFECT OF DELIVERY—RIGHTS OF SELLER.

When goods sold on credit and shipped by carrier reach their destination, the vendor's right to possession by stoppage in transitu is gone, his potential security is lost, and his status in relation to such goods is no different than that of a general creditor of the vendee.

4. SALES ⟨key⟩296—STOPPAGE IN TRANSITU—TERMINATION OF TRANSIT.

Where a carload of tomato pulp is sold on credit, delivered to carrier for shipment under a bill of lading designating a certain siding, and the car-

rier has placed the car on such siding, the pulp has reached its destination, and the transit is at an end, so that the right of stoppage in transitu cannot thereafter be exercised.

**5.** SALES ⬦⟶161—PERFORMANCE OF CONTRACT—DELIVERY.

Where a car of tomato pulp has been sold on credit, and delivered to a carrier for transportation under a bill of lading designating a certain siding on which it was to be placed, the act of placing the car on such siding by the carrier constituted complete delivery.

**6.** BANKRUPTCY ⬦⟶152—TITLE OF TRUSTEE—DATE OF ADJUDICATION.

The title of a trustee in bankruptcy to the goods of the bankrupt vests by operation of law upon the trustee's appointment and qualification as of the date of adjudication, under Bankruptcy Act, § 70a (Comp. St. § 9654).

**7.** BANKRUPTCY ⬦⟶101—TITLE TO PROPERTY WAITING QUALIFICATION OF TRUSTEE.

During the time intervening between an adjudication in bankruptcy and the qualification of the trustee appointed, the title to the bankrupt's property, while nominally in the name of the bankrupt, is in custodia legis, awaiting administration, and the receiver is the only person who can legally take possession of the property.

**8.** BANKRUPTCY ⬦⟶152—POSSESSION OF BANKRUPT PROPERTY—RIGHT OF TRUSTEE.

Upon the appointment of a trustee in bankruptcy, the trustee's right to the possession of goods to which the bankrupt had title relates back to the time possession thereof was taken by the receiver.

**9.** BANKRUPTCY ⬦⟶140(1)—STOPPAGE IN TRANSITU—POSSESSION BY RECEIVER IN BANKRUPTCY.

A receiver in bankruptcy has the right to take property sold to the bankrupt and shipped by carrier from the carrier on its arrival at destination, and such taking ends the right of stoppage in transitu.

In Bankruptcy. In the matter of Arctic Stores, bankrupt. On review of a referee's order denying the claim of William Silver & Co. to recover the value of certain goods sold by the bankrupt's receiver. Order affirmed.

Charles E. Hendrickson, Jr., of Jersey City, N. J., for petitioner William Silver & Co.

Furst & Furst, of Newark, N. J., for trustee.

RELLSTAB, District Judge. William Silver & Co., a corporation (hereinafter called the petitioner), has brought here for review the referee's order denying its petition to recover the value of a car of tomato pulp sold by the receiver of the Arctic Stores, bankrupt. The pulp was originally sold by the petitioner to the Arctic Stores on credit. From the bill of lading it appears that the car of pulp was consigned to the "Arctic Stores, Cussen's Siding, Marion, New Jersey, f. o. b. Salem, New Jersey." The car arrived at Marion, and was placed on the siding referred to, before 7 o'clock a. m. on October 18, 1917, at which hour it was seen by the consignee's chief clerk on his arrival at the consignee's warehouse. This siding bore the name of the president (Cussen) of the Arctic Stores, and was alongside the latter's warehouse.

About noon of that day, upon the filing of an involuntary petition in bankruptcy against it, and its written admission of inability to pay

⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
258 F.—44

its debts and willingness to be adjudged a bankrupt, the Arctic Stores was so adjudged. Later in the day a receiver was appointed to take charge of the assets of said bankrupt. On October 19th the receiver had the pulp removed from the car to the bankrupt's warehouse, and later on that day the carrier removed the empty car from the siding. On the following day (October 20th) the petitioner ordered the carrier not to make delivery of the pulp.

The referee found that both actual and constructive delivery of the pulp had been made to the receiver "before the shipper gave the railroad company notice to stop the goods in transit, and that therefore the petitioner's notice to the carrier came too late," and he thereupon made the order here under review. The petitioner seeks a reversal of this order on the ground that the possession of the receiver was not that of either the bankrupt, who, by the adjudication, was bereft of all interest in that property, or of the trustee, who had not yet been appointed, but of the persons who would be ultimately found entitled to the property, and that, as the right of stoppage in transitu was exercised before the appointment of the trustee, it was in time to reinvest the petitioner with the title to, and the right of possession of, the property in question.

[1] The pulp so shipped was sold to the Arctic Stores on credit, and when it was delivered to the carrier for transportation to the purchaser the title passed to the latter. Leonard v. Davis, 66 U. S. (1 Black.) 476, 483, 17 L. Ed. 222; National Bank v. Dayton, 102 U. S. 59, 62, 26 L. Ed. 77; McElwee v. Metropolitan Lumber Co. (C. C. A. 6) 69 Fed. 302, 305–307, 16 C. C. A. 232; Canadian Northern Ry. Co. v. Northern Miss. Ry. Co. (C. C. A. 8) 209 Fed. 758, 760, 126 C. C. A. 482; Benj. on Sales (5th Ed.) 218, 837, 838. See, also, N. J. Uniform Sale of Goods Act, approved May 7, 1907 (N. J. P. L. 1907, p. 311); 4 N. J. Comp. Stat. 4645, § 19, rule 4(2), and section 46(1).

[2] While the right to stop delivery of goods sold on credit is predicated on the insolvency of the buyer, yet neither insolvency nor bankruptcy of the buyer works a rescission of the contract of sale, and an effective stoppage in transitu does not in itself annul the sale or divest the purchaser of the title to the goods, which passed on delivery to the carrier. Sheppard v. Newhall (C. C. A. 9) 54 Fed. 306, 4 C. C. A. 352; Benj. on Sales (5th Ed.) pp. 808, 809, 816; N. J. Uniform Sale of Goods Act, supra, §§ 57, 61. It has been said that "the right of stoppage in transitu is merely an extension of the lien for the price which the vendor has after contract of sale and before delivery of goods sold on credit." Johnson v. Eveleth, 93 Me. 306, 45 Atl. 35, 48 L. R. A. 50. A more nearly accurate statement seemingly is that the insolvency of the buyer gives the vendor a right to reobtain possession of the goods from the carrier, while they are on their way to the vendee, and that upon giving notice not to deliver before the carriage is at an end he may retake and retain the goods as security for the price. See Arnold v. Delano, 4 Cush. (Mass.) 33, 50 Am. Dec. 754; N. J. Uniform Sale of Goods Act, supra, § 57.

[3] However, this right to retake only continues while the goods are in transit. When the goods reach their destination, the vendor's

right to repossession is gone, his potential security is lost, and his status in relation to such goods is no different from that of a general creditor of the vendee.

[4] In the instant case, when the carrier placed the car containing the pulp on the siding designated in the bill of lading, it had reached its destination and the transit was at an end. The Eddy, 72 U. S. (5 Wall.) 481, 495, 18 L. Ed. 486; Conyers v. Ennis, 6 Fed. Cas. 377, No. 3149; In re M. Burke & Co. (D. C. W. D. Pa.) 140 Fed. 971, 15 Am. Bankr. Rep. 495; In re W. A. Paterson Co. (C. C. A. 8) 186 Fed. 629, 108 C. C. A. 493, 25 Am. Bankr. Rep. 855, 34 L. R. A. (N. S.) 31; Shepard & Morse Lumber Co. v. Burroughs, 62 N. J. Law, 469, 41 Atl. 695; 2 Kent, Comm. pp. 706, 707; Johnson v. Eveleth, supra; Benj. on Sales (5th Ed.) pp. 906, 907; Scott v. Pettit, 3 B. & P. 469; Ellis v. Hunt, 3 T. R. (D. & E. 464; Kendal v. Marshall Stevens & Co. (C. A.) 11 Q. B. D. L. R. (1882–83) 356; Sawyer v. Joslin, 20 Vt. 172, 49 Am. Dec. 768.

[5] When the carrier placed the car on the designated siding, its duty as a carrier was ended. If that were not a delivery, what would be one on such a shipment? Certainly the carrier would not have to unload the car. It would not be liable to the vendor for failing to stop delivery, for delivery had been made at the very place designated in the bill of lading. If the carrier's placing the car on the siding was a delivery, so as to exonerate it from liability to the vendor, it is none the less so when the vendor invokes a remedy against the vendee necessarily solely predicated on the giving of a notice to stop delivery while the goods are yet in transit, i. e. before delivery made.

The bankruptcy receiver's taking the pulp out of the car the day following its delivery on the designated siding (an adjudication in bankruptcy having taken place in the meantime) was not a necessary act in order to bring the transportation to an end. Such removal was to release the car for further use and to safeguard the property of the bankrupt, which by the delivery of the day before had become absolute.

The referee could have properly denied the petitioner's claim on the ground that delivery had been made to the Arctic Stores before bankruptcy had intervened. However, as noted, he based his denial not upon that ground, but upon the ground that delivery had been made to the receiver before the stop notice had been given to the carrier.

The receiver in thus removing the pulp was acting in the line of his duty. He did nothing more than what the Arctic Stores could have done between the time the car was placed on the siding and the time of the filing of the petition in bankruptcy. In thus dealing with the pulp the receiver was not, as petitioner's counsel claims, taking goods belonging to the petitioner, but property the title to which had vested in the Arctic Stores from the time it was delivered to the carrier f. o. b. the place whence the shipment came, and which had become absolute upon its being placed on the siding referred to.

[6] This title by operation of law vested in the trustee, upon his appointment and qualification, as of the date of the bankrupt's adju-

dication. Section 70a, Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 565 (Comp. St. § 9654).

[7] During the time intervening between the adjudication and the qualification of the appointed trustee, the title, while nominally in the name of the bankrupt, was in custodia legis, awaiting administration. The receiver from his appointment was not only the proper person, but the only person, until the appointment and qualification of the trustee, who could legally take possession of this pulp and the other property of the bankrupt. He might properly be held to be the "legal successor in interest of the buyer," within the meaning of the New Jersey Uniform Sale of Goods Act, supra, § 70, and whose taking property from a carrier ends the transit under section 58 of that act. However, and regardless whether that be so, the receiver's conduct in thus taking the pulp must be treated as in the due administration of the bankruptcy law and on behalf of the trustee to be appointed.

[8] Upon such appointment the trustee's right to the possession of such pulp would relate back to the time the receiver took it over.

, To accept petitioner's contention that there was no one between the time of adjudication and the qualification of the trustee to do any act either on behalf of the bankrupt, who by the adjudication was shorn of all power to do anything in respect to the property but recently subject to its dominion, or of the trustee, who could not be appointed for at least 11 days, and might not be for several months, after the adjudication, is to hold that there is a hiatus in the administration of bankruptcy estates during which certain creditors might secure a preference over other creditors, a bare statement of which is sufficient to reject such contention.

[9] That the receiver in bankruptcy has the right to take property from a carrier on its arrival at its destination, and that such taking ends the right of stoppage in transitu, has been held by the following cases: In re Allen (D. C. M. D. Pa.) 178 Fed. 879, 24 Am. Bankr. Rep. 574; In re White (D. C. M. D. Pa.) 205 Fed. 393, 29 Am. Bankr. Rep. 358. This was also the view of District Judge Chatfield in Re Darlington Co. (D. C. E. D. N. Y.) 163 Fed. 385, 20 Am. Bankr. Rep. 800. In this connection see, also, Conyers v. Ennis, supra, and Millard v. Webster, 54 Conn. 415, 8 Atl. 470.

From the foregoing it follows that whether the right of stoppage in transitu be held to have ended on the arrival of the car at its billed destination, or upon the removal of its contents by the receiver, the petitioner's claim that it is exclusively entitled to the proceeds of the sale of the pulp must be denied, as its notice to stop delivery was not given until after the last of these two acts had taken place.

The referee's order is affirmed.