## NATIONAL BANK *v.* DAYTON.

A., being indebted to B., proposed, in consideration of a further loan of money, to deliver, in payment of both sums, a certain quantity of wood at a stipulated price per cord. B. accepted the proposal, C. agreeing to receive the wood from him at that price. The loan was made, and A., pursuant to the agreement of the parties, delivered the wood upon the premises of C. *Held,* that A.'s title passed by that delivery, and that the wood was not subject to levy under executions thereafter issued by his creditors.

ERROR to the Supreme Court of Wyoming Territory.

The facts are stated in the opinion of the court.

*Mr. Samuel Shellabarger* and *Mr. Jeremiah S. Wilson* for the plaintiff in error.

*Mr. William A. Maury* for the defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This was replevin by the Wyoming National Bank against Thomas J. Dayton. The latter, as sheriff of Albany County, Wyoming Territory, had, by virtue of several attachments against the property of one W. S. Bramel, levied upon a number of cords of wood. The bank, claiming to be the owner of the wood at and before the time when the writs were issued and levied, brought this action to recover it, and damages for the detention thereof.

In the court of original jurisdiction a verdict was returned in favor of the defendant, and judgment thereon entered. From the judgment of affirmance by the Supreme Court of the Territory the present writ of error is prosecuted.

Upon the question of the ownership of the wood, at the date of the respective levies, the evidence was conflicting, and presented a case peculiarly within the province of the jury to determine, under proper guidance as to the law governing it. Without attempting to set forth the whole case, it is sufficient to remark that there was evidence to establish the following facts: —

Bramel was engaged in the business of bringing wood down the Big Laramie River to Laramie City. He had a contract with the Union Pacific Railroad Company for the delivery to it, at its yard in that city, by a specified date, of five hundred cords of wood at $5 per cord. In the necessary preparations for that engagement, he had, prior to Oct. 30, 1873, received from the bank about $2,100, which its president testified had been advanced to him at different times on this same wood. For these advances the bank held his notes. On the day last named he applied to the president of the bank for a further advance of money. His application was denied. He then proposed that the bank should *buy* all the wood he had, some of which was then in the yard of the company, but not received by it, some on the bank of the river, and some in the river. This proposition was at first declined; but, after further conversation between him and the president of the bank, it was agreed that the bank should take the five hundred cords at $5 per cord, to be paid for in the debt of $2,100, then held by the bank, and $400 in cash, upon the condition that the company

would receive the wood from the bank upon like terms. It was a part of the arrangement that Bramel should, in that event, put the wood into the yard of the company, and use the $400 for that purpose. In order to ascertain whether the company would assent to this arrangement, the bank cashier and Bramel, by direction of the president of the bank, visited Mr. Shankland, who had the control of all such business for the company. They returned together and reported that Shankland approved the arrangement, and would make out the vouchers for the wood to the bank. The cashier then paid $400 to Bramel, taking his note therefor, bearing interest at three per cent per month ; and the latter went on putting the wood into the yard of the company. He had delivered at that place about three hundred and seventy-five cords, and had a few cords on the river-bank, when it was all seized by the defendant in error, under the attachments against Bramel's property. None of the wood had then been actually received by the company. Bramel's notes, to which we have referred, were held by the bank at the commencement of this action. They were taken, as the bank claimed and proved by its president, more as memoranda than anything else, and had not been surrendered to Bramel because he had not called at the bank for them.

Such was, substantially, the case of the bank. We do not say that the jury should have found that it was made out, even by a decided preponderance of the evidence, but only that there was evidence tending to show that the contract and acts of the parties were such as the foregoing statement sets forth.

Looking at the case in the light of these facts, it seems that the transaction between the bank and Bramel was something more than a mere agreement as to the disposition of the money to be obtained from the company. It constituted a sale to the bank of all the wood which he delivered at the yard of the company. The absolute title to it passed to the bank upon his depositing it there, with the intention or for the purpose of completing the sale. Nothing more remained to be done by him. His contract bound him to deliver the wood, not to the company, but at its yard only. In legal contemplation, it then came into the possession and control of the bank, and was not thereafter subject to be reached by his creditors, upon the mere

ground that the title had not passed, or that a complete delivery had not been made. The delivery in execution of the contract, at a specified place not belonging to him, was such as accorded with the nature of the property. When placed in the yard of the company, in pursuance of the agreement, the acts of the parties united with the previous verbal contract, resulting in a consummated obligatory agreement, depriving the seller of all further control of the property, and putting it under the exclusive dominion of the buyer, with a perfected title thereto.

From that moment, the indebtedness of the seller to the bank to the extent of the contract price of the wood actually delivered at the designated place was discharged, and the property was thenceforward at the risk of the buyer. Actual manual possession of the bank by its agents was, under the circumstances and regarding the nature of the property, both impracticable and unnecessary to a complete delivery. These conclusions are abundantly sustained by authority. Benjamin, Sales, bk. 1, pt. 2, p. 134; Hilliard, Sales, c. 7, pp. 124–130; Browne, Statute of Frauds, c. 15, p. 323.

The instructions were not in accordance with these views. The court failed to state distinctly and clearly the principles of law by which the jury were to be governed. Taking all the instructions together, it is evident that the deposit of the wood at the yard of the company, in pursuance of the previous agreement between the bank and Bramel that it should be put there for ultimate delivery to the company, was not regarded by the court as such a change of possession as would, in law, pass the title to the bank as against the creditors, whose attachments were subsequently issued and levied.

That we do not misinterpret the instructions is quite clear, from the opinion of the Supreme Court, which declared that " the record shows that the full and absolute control and possession of the same was publicly and privately retained by Bramel, after the alleged unconditional sale." In view of the pleadings and evidence this could not be the case, unless the court below not only disregarded the evidence in behalf of the bank, but was, further, of opinion that the delivery of the wood at the yard was insufficient to pass the title, and change the control and possession of the property from the seller to the

buyer.    But that position, as we have seen, is unsound both
upon principle and authority.    We repeat that, if Bramel
agreed to sell and the bank agreed to buy the wood at a fixed
price per cord, the seller to remove the wood from the river and
put it in the yard of the company, for sale or delivery to the
latter by the bank, which was to receive the vouchers, and if
the wood was so deposited in pursuance of that sale and agree-
ment, then, in legal contemplation, the title and possession of
the property passed to the bank from the moment it reached
the yard.    If after being placed there and before its receipt
by the company the wood had been destroyed or stolen, the
loss would have been that of the bank.    It is immaterial, under
the circumstances, that the company had not, when the attach-
ments were levied, expressly or formally recognized the bank's
ownership of the wood.

Some stress was laid upon the fact that the bank took the
note of Bramel for the $400 advanced to him.    That act, it is
claimed, was inconsistent with the theory of an absolute pur-
chase by the bank.    There was, however, evidence conducing
to show that the bank took the note by way only of precaution,
and to meet the possible contingency of the non-delivery of the
wood at the yard of the company.    But it was for the jury to
say what weight should be given to that fact in determining,
upon the whole case, whether there was an actual sale of the
wood, or only an agreement as to the disposition of the pro-
ceeds after it should be received by the company.

. The judgment will be reversed, with directions to require
the judgment of the court of original jurisdiction to be set
aside and a new trial granted, and for such further proceedings
as may be in conformity with this opinion ; and it is

*So ordered.*