WHITE *v.* POSTAL TELEGRAPH AND CABLE CO.

COMMON CARRIERS; MESSENGER SERVICE; TRANSPORTATION OF MONEY; RATIFICATION.

1. Companies engaged in supplying messenger service to the public are to a certain extent common carriers, must serve impartially all who require their services, are liable upon proof of negligence; and under some circumstances and always by special contract, they may make themselves insurers.

2. On an appeal by the plaintiff from a judgment on a verdict directed by the court in an action brought originally before a justice of the peace against a messenger company, to recover for the loss of money intrusted to a boy in its employ, this court, in view of the absence of a decision of a court of last resort upon the subject, the absence of written pleadings, and because of conflicting statements of counsel as to the grounds upon which the court below directed a verdict, refused to decide whether the action should have been in form *ex contractu* or *ex delicto.*

3. In an action against a messenger company for the loss of money contained in a letter intrusted to a boy in its employ, where it appeared that it was not the custom of the company to receive money for transportation; that neither it nor the boy was informed that the letter contained money; and that the letter was in answer to another letter carried by the boy, which requested that a check, and not money, be sent to the plaintiff,—it was *held* that it was the duty of the plain-

tiff to affirmatively show that the defendant had assumed to act as a common carrier of money, and not having done so the trial court properly directed a verdict for the defendant.

4. In such a case, the acceptance by the company of the charge for its messenger service was *held*, under the circumstances, not to be a ratification of the messenger's act in undertaking to safely transport the money in question.

No. 1517.   Submitted March 24, 1905.   Decided April 4, 1905.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia upon a verdict directed by the court in an action originally brought before a justice of the peace.                                    *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a judgment in favor of the defendant-appellee, the Postal Telegraph & Cable Co. entered upon a verdict of the jury found by direction of the court.   The action was brought originally in a justice court, where judgment was given for the plaintiff, Charles White, and from that judgment an appeal was taken to the supreme court of the District of Columbia, which resulted in the judgment which is now here for review.   As is usual in this class of cases, there were no written pleadings, and the bill of exceptions presents all that is before us as to the form of the action and the various steps taken therein after it came into the supreme court of the District.

Upon the trial it appeared that Douglass & Douglass, a firm of lawyers, called a messenger from the office of the Postal Telegraph & Cable Company, a corporation doing business in the District of Columbia, a part of its business being that of supplying messenger service to the public.   The boy was given a letter to deliver to Gasch Brothers, and directed to get an answer.   The letter was delivered to a clerk in the office of Gasch Brothers, who receipted for the same and also gave to the boy an envelope said to have contained $75.   The clerk did not tell him that the envelope contained money, nor does she know

whether he saw her place the money in it. He denies that he knew that there was money in the envelope, and testified that. he gave what he received to a stenographer in the office of Douglass & Douglass, from whom he received the first letter. This is denied. There is a conflict of testimony as to when the loss of the money was first known to Douglass & Douglass, but the weight of evidence is that it was not known to the appellee until some two or three weeks after the occurrence. It appears that no receipt was taken by the boy when he claims to have deliv-ered the answer. So far as appears, he was not furnished by the company with any blank for that purpose. It does appear, however, that later in the day of the transaction he was sent back to the office of Douglass & Douglass to get authority for the charge for the service to them, and that such authorization was written on the back of the receipt signed by Gasch Brothers' clerk. It seems that Douglass & Douglass were the attorneys. or agents for the appellant to collect interest, when due, upon certain notes, the makers of which made payment through Gasch Brothers. Witnesses, called on behalf of the appellee, testified that it was not its custom to carry money packages, ex-cept at the risk of the owners, but it is admitted by them that no general or special notice of such custom is given to customers. For the services rendered by its messengers, charges are made according to the distance covered, and not according to the size or value of the letter or parcel.

*Messrs. Baker & Sherrill,* for the appellant:

1. The boy was the general agent of appellee for all purposes. within the scope of his employment, and as such agent his re-ceipt of the envelope containing the money was the receipt of appellee. Story, Agency, sec. 58; Evans, Agency, sec. 134; *Butler* v. *Maples,* 9 Wall. 766; *Louisville Coffee Co.* v. *Stakes,* 78 Ala. 372; *National Furnace Co.* v. *Keystone Mfg. Co.* 110 Ill. 427; *Kingsley* v. *Fitts,* 51 Vt. 414; *Chicago R. Co.* v. *Conkling,* 32 Kan. 55.

2. There is no rule of law or statute exempting appellee.

from the ordinary law of agency, and there is nothing in the character of the business carried on by it which would operate to change that status. *American Dist. Tel. Co.* v. *Walker,* 72 Md. 454. The service here was consistent with the ordinary business of appellee, and appellee was bound by what he ought to have known, in the exercise of ordinary care, its agent was doing in the usual scope of his employment. *Kingsley* v. *Fitts,* 51 Vt. 414. In *Feiber* v. *Manhattan Dist. Tel. Co.* 22 Abb. N. C. 121, it was held that such a company is liable for the loss of a package caused by one of its messengers delivering it contrary to the instructions of the sender. In *Sanford* v. *American Dist. Tel. Co.* 13 Misc. 88, a case very similar to this, in which a package containing money was sent by a messenger of the defendant company for deposit in a bank, and was not delivered, it was held that the defendant was undoubtedly liable for the loss in a proper action, although no recovery could be had in that particular action.

3. Even if the act of the boy in receiving a money package for delivery was unauthorized, and his agency was limited by the custom of the company not to carry money packages at the usual rates, appellee is nevertheless liable in this case on account of the fact that it confirmed and ratified the act of Barnes, by accepting compensation for his services with full knowledge of all the facts. *Fleckner* v. *United States Bank,* 8 Wheat. 338; *Drakeley* v. *Gregg,* 8 Wall. 242; Story, Agency, pars. 239–242; 96 U. S. 640.

*Mr. W. W. Millan* and *Mr. R. E. L. Smith* for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

In passing, it may be said that in all the larger cities there are now companies engaged in this line of service, and undoubtedly they are in a certain sense and to a certain extent common carriers. They must serve all who require their services impartially, and undoubtedly they are liable upon proof of neg-

ligence, and under some circumstances, and always by special contract, they may make themselves insurers.

It is strenuously contended by counsel for appellee that the action is wrong in form; that the action is *ex contractu;* that it should have been an action *ex delicto.* He cites *Sanford* v. *American Dist. Teleg. Co.* 13 Misc. 88, 34 N. Y. Supp. 144, and *Hirsch* v. *American Dist. Teleg. Co.,* which we find reported in 90 N. Y. Supp. 464. They bear out his contention, and the former case discusses the two forms of action at considerable length, and concludes that recovery could not be had in an action based on contract, but could, on proper proofs, be had in an action *ex delicto.* Leave was given to go to the court of appeals, but no appeal appears to have been taken. In the absence of a decision of a court of last resort, and still more because, in the absence of written pleadings and in view of the different and conflicting statements of counsel as to the grounds upon which the court directed a verdict, we do not deem it advisable to pass upon the question, but prefer to decide the appeal on other grounds. Conceding that appellee is a common carrier, we think it by no means follows that there was sufficient evidence to warrant or require the case to be submitted to the jury. The weight of authority is in favor of the proposition that there is no presumption that a carrier of the class to which the appellee belongs assumes to act as a common carrier in the transportation of money, and that the assumption of that status must be affirmatively proved by the party alleging it. 6 Am. & Eng. Enc. Law, p. 258. In the case at bar it appears that it is not the custom of the appellee to accept money for transportation. The company was not informed of the nature of the service required, and beyond this it appears that the service required was not one involving the delivery of currency. On the contrary, the letter intrusted to the messenger called for something else. It said, "Kindly send check by bearer." Neither the appellee nor Douglass & Douglass authorized Gasch Brothers to send bank notes, or any other form of money, by the messenger. We think it was negligence on their part to send money instead of a check, and, doubly so,

without notifying the boy that the envelope contained money. The messenger was the agent of the appellee, and his custody was the company's custody, and his default the company's. The converse is equally true. Absence of notice to him was lack of notice to the company. While the messenger doubtless had authority to accept whatever was intrusted to him, he was without express authority to contract for the carriage of money, and, doubly so, with a third party. To what extent Gasch Brothers made the messenger their agent to deliver the money to Douglass & Douglass, and thereby relieved the appellee of any claimed liability, is an interesting question, but one not necessary to be here decided.

While there is more or less conflict as to the extent of liability of carriers of the class in question, we find a general line of cases which hold that, under the circumstances disclosed by this record, common carriers would not be liable. In *Sewall* v. *Allen,* 6 Wend. 335, it was held that a steamboat company which, by its act of incorporation, was made liable as a common carrier, was not a common carrier of bank bills unless it were shown that it had made the carriage of such packages a part of its ordinary business.

In *Chicago & A. R. Co.* v. *Thompson,* 19 Ill. 578, it was held that the authority of an agent to receive packages and the like does not imply power to receive bank bills. To make a common carrier liable notice should be given that the package contains money.

In *Hayes* v. *Wells, F. & Co.* 23 Cal. 185, common carriers of letters inclosed in envelopes were held not liable for articles of special value contained in them unless informed at the time of the receipt of the letter of the value of its contents. This seems to us a salutary rule as applied to these so-called messenger companies. They employ lads, and when valuables are to be transported it is but fair that the employer should be informed of the nature of the service required, so that it may select one of tried integrity. It was because the nature of the service required was made known to the company that it was held liable in *American Dist. Teleg. Co.* v. *Walker,* 72 Md.

454, 20 Am. St. Rep. 479, 20 Atl. 1, cited by appellant. The boy also in fairness should be notified, so that he may exercise necessary care.

There is little force in appellant's contention that by accepting 20 cents the appellee ratified the messenger's act in undertaking to safely transmit the money in question. The record discloses that the charge was entered on Douglass & Douglass's bill among other items, and presumably upon the date of the transaction, which was long before the loss was communicated to the company, and it would be a very harsh ruling that would predicate ratification on the fact that the bill was sent out without the cancelation of the item.

In the light of what the record discloses we are not prepared to say that the trial judge erred in directing a verdict for the defendant. He was justified in construing the evidence in the most favorable light for the defendant, and we see no good reason for disturbing his ruling, and much to warrant it.

The judgment appealed from should be affirmed, with costs, and it is so ordered.                                    *Affirmed.*