## SMITH'S TRANSFER & STORAGE CO. v. BATIGNE.

### No. 115.

Municipal Court of Appeals for the
District of Columbia.

Nov. 23, 1943.

Francis C. Brooke, of Washington, D. C.
(Lloyd Fletcher, Jr., of Washington, D. C.,
on the brief), for appellant.

Justin L. Edgerton, of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

Appellant was defendant in a suit by appellee for certain items lost and others damaged in a consignment of household goods shipped from California and received at appellant's warehouse in Washington. The parties will be referred to herein as plaintiff and defendant.

There is substantially no factual dispute. Plaintiff's goods were packed at her home in California by a warehousing company, hereinafter identified as "Norton's", were labeled by it, and shipped East by freight. They comprised fourteen items; eight were described in the shipping receipt as cartons, two as bundles, two as flat packages, one as a trunk, and one a handbag. The total weight was 815 pounds. The charges were collect, amounting to $67.29, including freight to point of delivery. In addition to the labels placed by Norton's, the cartons, bundles and packages, which were wrapped in heavy tar paper, were marked "Batigne" by plaintiff.

This shipment was forwarded by Norton's by freight in a car with goods of a Dr. Bernard Silber. The items comprising the latter were a trunk, four boxes, and a bookcase, weighing 610 pounds. Charges to be collected from consignee were $47.17.

While the car containing these shipments was en route to New York, on May 20, 1942, plaintiff telegraphed from Washington to Norton's to "direct entire shipment to Washington care Smith Storage." The shipment to Dr. Silber, either at the point of origin or en route, was also intended for delivery to defendant company.

Norton's, on May 21, 1942, sent defendant separate letters advising of the respective shipments, enclosing the appropriate invoices which described plaintiff's fourteen packages, and the six items belonging to Silber, and stating that each consignment would be transhipped from New York to the defendant company for the respective owner. Plaintiff's insurance policy in the sum of $500 was also enclosed.

On May 27, 1942, Santini Bros. Inc., a New York shipping agent, advised defendant by separate letters that the two shipments of the respective owners had been forwarded, enclosing bills of lading of the Pennsylvania Railroad in which the individual items duplicated those contained in the original receipts forwarded by Norton's to defendant on May 21. The names of the respective owners appeared on all of these documents.

When the freight car arrived in Washington, defendant was notified by the railroad company by telephone that the Silber shipment had arrived. Both were, in fact, contained in the same car. Defendant received both shipments from the railroad company, and was furnished arrival notices in triplicate, one covering the Silber shipment wherein the six items were described and identified as his property; the other listed and described the fourteen items of plaintiff's shipment but did not contain her name. The weight of each shipment was stated, and the amount of freight charges prepaid on each.

Defendant, apparently misled by the telephone message from the railroad freight office advising of the arrival of the Silber shipment, and by the absence of plaintiff's name on the arrival notice describing her property, treated both lots of goods as the Silber shipment.

The goods were received on May 27. Plaintiff made frequent inquiries and was told that her goods had not arrived. Silber returned to California and notified defendant to re-ship his goods. On June 17th, defendant shipped the plaintiff's goods, along with those belonging to Silber, to the latter at Oakland, California.

Upon their arrival Silber discovered that this large addition had been made to his own goods. Defendant was notified. By its instruction plaintiff's goods were returned. They reached Washington on September 19. Certain cartons, however, were missing and were never located; others were received back in a damaged condition.

At the time of the original shipment plaintiff procured a policy of insurance on her property against loss in transit, in which the goods were valued at $500. The original shipping receipt delivered to plaintiff by Norton's valued the goods in case of loss at ten cents per pound, or a total of $81.50.

The "Shipping Order and Declaration" addressed to Norton's and signed by plaintiff's husband, introduced in evidence by defendant, contained certain valuations of

plaintiff's goods. The pertinent paragraphs are quoted in the margin.[1]

The trial court found that the loss was caused by negligence of the defendant and awarded plaintiff $1,234.35, for the value of the articles contained in the missing cartons. Defendant has appealed.

The assignments of error are substantially as follows:

(1) That defendant's liability, if any, was limited by contract to a proportionate part of the valuation declared in the shipping order and receipt.

(2) That declarations of value for insurance and for rate purposes contained in the shipping order and communicated to defendant prior to its receipt of the shipment operate as an estoppel barring plaintiff's claim to an amount in excess of a proportion of the amount so stated.

(3) That defendant was a gratuitous bailee, responsible only for gross negligence, a degree not established by the evidence.

(4) That defendant was not guilty of a lack of that degree of care required under the circumstances of the case.

Error was also assigned upon the failure of the trial court to expressly rule upon the character of the bailment. The absence of comment in that court's opinion does not imply that the character of the bailment was misconceived.

## I

Defendant claims that the contractual limitation of liability to ten cents per pound extends to it and that the finding, even if it were liable, should have been for that proportionate part of $81.50, which the value of the lost and damaged goods bore to the whole. This would approximate $20.

■ Contracts limiting liability for the negligent loss of goods in carriage or storage are upheld by the courts and are not regarded as against public policy for reasons and with limitations well expressed in Adams Express Company v. Berry & Whitmore Co., 35 App.D.C. 208, 31 L.R. A., N.S., 309: "This is permitted upon the theory that, as more expense is entailed in the exercise of a high degree of care than would be necessitated by the exercise of a lower degree of care, it is but equitable that the carrier should obtain more compensation in the one instance than in the other. Hart v. Pennsylvania R. Co., 112 U.S. 331, 5 S.Ct. 151, 28 L.Ed. 717; Pennsylvania R. Co. v. Hughes, 191 U.S. 477, 24 S.Ct. 132, 48 L.Ed. 268. Following this theory, the law has permitted the carrier to make special contracts with the shipper, in which the shipper, in consideration of a reduction in the rate which would ordinarily be charged for transportation of goods such as he has for shipment, agrees that, in case the goods are not safely carried to their destination, he will accept in damages a sum stated, which is usually much less than the real value of said goods. By so doing the shipper waives, in a measure, his common-law right to exact in damages the full value of the goods. But courts have closely scrutinized such contracts, and have generally allowed the carrier to make them only where they provided for partial, not total, absolution from liability, and, further, where the carrier furnished consideration for such limitation in the form of a reduction in the usual rates. To such restriction the carrier im-

---

[1] "Statement of Value for Freight Shipment

"As my agent, you may declare the value of each article of this shipment to be * * * per pound. Goods shipped in joint carloads must take a valuation of Ten Cents per Pound and no goods can be accepted for shipment in these cars at a higher valuation.

"Note—If shipper prefers to pay increased freight rate on goods shipped at a higher valuation than the above, give definite valuation per pound. * * *

"Insurance Order

"Please place my account with the Insurance Co., $500.00 * * * insurance, covering my household goods while in transit against the perils noted in the schedule listed below. This amount represents the full cash value of the goods unless otherwise noted."

\*　　　\*　　　\*　　　\*

"Second: For rate making purposes I limit the liability on these goods to ten cents per pound and the Norton Co. is authorized to declare the goods covered by this order to any Railroad Company, Steamship Company, Transfer Company or other Agency necessary in the transportation, transfer or handling of the shipment at that liability."

\*　　　\*　　　\*　　　\*

"Fourth: That the Norton Co. will not be responsible for loss or damage to goods by fire or otherwise in excess of ten cents per pound while in its own care, or in cars while being loaded or unloaded, or in warehouse awaiting shipment or delivery."

pliedly submits when it engages in a business of a public nature. Liverpool & G. W. S. S. Co. v. Phenix Ins. Co. (The Montana), 129 U.S. 397, 9 S.Ct. 469, 32 L. Ed. 788."

■ Conceding the validity of the restricted liability clause involved in the present case, the question here is whether defendant's relation to the transaction was such that it too was a "transfer company or other agency necessary in the transportation, transfer or handling of the shipment" whose liability was limited by the declaration of value.

The only communication from Norton's to defendant was its letter of May 21 wherein it states: "We received a telegram from Mrs. Batigne today in which she instructed us to ship her goods on to Washington, D. C. in your care."

Plaintiff's telegram directing Norton's to forward her goods to her in Washington "care Smith Storage" constituted defendant her agent to receive the shipment. Compliance with that order completed the service to be rendered by Norton's and by the transportation agencies contemplated in the shipping order.[2]

We, therefore, hold that the contract between Norton's and plaintiff terminated upon delivery of plaintiff's goods to defendant's representative, and that the terms of that contract limiting liability did not extend to defendant.

## II

■■ It was contended that representations as to value contained in the insurance policy and in the bill of lading, both authorized by the shipping order, created an estoppel limiting any recovery to a proportionate part of the total values stated.

In White v. Postal Telegraph & Cable Co., 25 App.D.C. 364, 4 Ann.Cas. 767, defendant was held not liable for the loss of $75 in money contained in a sealed envelope entrusted to its messenger without disclosure of the nature of its contents. But in the later case of Adams Express Co. v. Berry & Whitmore Co., supra, where an article identified as a diamond brooch was valued at $50 in a shipping receipt similar in form to that involved here, the court,

holding that the contractual limitation did not apply to a conversion of the property by defendant's own employee, sustained a verdict for $500.

We hold that where the character of the article is made known, a representation of its value does not create a limitation upon the liability of a bailee unless it is so provided by contract. The trial court correctly applied the rule that an estoppel may arise when the owner fails to disclose the presence of valuable property, when it excluded valuable wearing apparel and other items not classed as "household goods" in determining the damages to be awarded in this case.

## III

■ Defendant's further claim that it was a gratuitous bailee, liable only for gross negligence, is not sustained by the facts. It was told that the charges to Washington, to be collected and remitted, were $67.29, and that it was to "collect all your charges."

When Norton's wrote on May 21, that Mrs. Batigne had "instructed us to ship her goods on to Washington, D. C., in your care," and when plaintiff over a period of weeks made frequent inquiries as to the arrival of her goods, defendant did not disclaim responsibility. When her goods were finally delivered it charged and collected $7 for its service. From this it is clear that the transaction was in the ordinary course of defendant's business and for its customary charges.

## IV

■ In considering the issue of defendant's negligence, a preliminary question is the effect of the representations as to value made by plaintiff's authority. Such representations were admissible as bearing upon the issue of negligence.

"The degree of care which a carrier may reasonably be expected to exercise in regard to a particular package entrusted to it for transportation is proportionate to the value of said package."[3]

Defendant had been notified by the receipt of the insurance policy and shipping papers that the cash value for insurance purposes had been stated at $500, and for

[2] Ela v. American Merchants' Union Express Co., 29 Wis. 611, 9 Am.Rep. 619; Wyoming National Bank v. Dayton, 102 U.S. 59, 26 L.Ed. 77; United States v. Hilbury, D.C., 29 F. 705; Chicago & N. W. R. Co. v. Merrill, 48 Ill. 425; see also 46 Am.Jur. 604; 55 C.J. 557.

[3] Adams Express Company v. Berry & Whitmore Company, supra.

shipping rates at ten cents per pound, or $81.50. It is, therefore, fair to assume that defendant was bound to exercise only that degree of care required in respect of a consignment of a value fairly indicated by the information in its possession.

Were these representations such as would justify defendant in assuming that its liability would be limited by either of the amounts stated? The policy recites, under the title "valuation", "valued at cash value on date of disaster." The great weight of authority, which we adopt, is that the measure of liability for the loss of used household goods is not the cash or market value but the actual value to the owner. It has been repeatedly held that the cash value of such used goods may be a nominal sum and is frequently but a small fraction of the actual value to the owner, which is the measure of his recovery for their negligent loss or conversion.[4] This was the measure applied by the trial court, and in the absence of a finding or evidence of cash or market value, we cannot say that it was excessive.

The shipping order and other documents furnished defendant, which contained the valuation of ten cents per pound, not only have the valuation printed in the form but in the first mentioned paper, the only one signed by plaintiff's husband, we find this statement: "Goods shipped in joint carloads must take a valuation of Ten Cents per Pound and no goods can be accepted for shipment in these cars at a higher value."

The fact that this valuation was set as a limitation of the carrier's liability, mandatory in joint car shipments, but was contradicted in the same instrument giving a cash value for insurance more than six times greater, did not in our opinion authorize defendant to regard the shipment as of negligible value or of trivial importance to its owner. It was bound to exercise a reasonable degree of care in its receipt and disposition.

The evidence indicates a lack of coordination between defendant's employee receiving the Silber consignment and the business office. The items in that shipment were not checked against the bill of lading or invoice from Norton's or Santini Brothers. Nor was such a check made when the Silber items, with plaintiff's, were re-shipped to California. The check sheet on that shipment, produced by defendant from its records, shows that it contained twenty items, not six, weighing 1,425 pounds, not 610.

The definite advices as to weights, items, and freight charges to be collected were ignored. The various cartons and containers bore labels, which do not appear to have been carefully examined. In part at least they were marked "Batigne" in large letters. Although the Railroad Company's telephoned message was merely that the Silber shipment had arrived, and the arrival notice covering plaintiff's goods failed to include a notation of plaintiff's name, this does not, in our opinion, excuse the failure of defendant to identify her goods or justify their confusion with those of Silber.

The finding of the trial court was correct and should be affirmed.

Affirmed.

---

[4] Anchor Stove & Fur. Co. v. Blackwood, 109 Ind.App. 357, 35 N.E.2d 117; Marsh v. Union Pacific R. Co., C.C., 9 F. 873; 15 Am.Jur. 536; Annotation 63 A.L.R. 240.